GELPCKE and others *vs.* QUENTELL.

The defendant, by a letter of credit dated at Bremen, addressed to the plaintiffs at New York, opened an account with the latter in favor of R. & Co., of New Orleans, for $50,000, to be used by sixty days' sight drafts; adding: "This credit is intended for advances to be made on consignments of merchandise to my address, and you will please to keep the same in force for the coming year, 1860. It is, however, not required that bills of lading accompany the advice of the drafts." *Held* that the general authority first conferred by this letter was not restricted by the subsequent clause. That the latter clause did not make it the duty of the plaintiffs to see, before they accepted drafts drawn by R. & Co. which were apparently within the terms of the authority, that they were drawn against consignments made to the defendant's address.

*Held, also,* that the clause, "it is, however, not required that bills of lading should accompany the advice of the drafts," should be construed as dispensing with the necessity of the bills of lading accompanying the drafts themselves.

Instruments of that character should be construed as the parties to whom they are addressed may fairly and reasonably be expected to understand them.

THIS is an appeal by the plaintiffs from a judgment entered at the circuit, dismissing the complaint, with costs.

This action was brought by the plaintiffs to recover from the defendant the sum of $33,419.45, with interest from April 16, 1860, being money paid and laid out by the plaintiffs for the defendant, at his request and for his account, by accepting and paying eight bills of exchange drawn by the firm of H. Rodewald & Co., at New Orleans, the agents and correspondents of the defendant, under and in conformity with a letter of credit, addressed by the defendant to the plaintiffs. By this letter, dated Bremen, December 24, 1859, the defendant writes to the plaintiffs:

"I take the liberty to open a credit with your house for my account in favor of Messrs. Henry Rodewald & Co. in New Orleans, for the amount of $50,000 to be used by sixty days' sight drafts.

This credit is intended for advances on consignments of merchandise to my address, and you will please to keep

the same in force for the coming year, 1860. It is, however, not required that bills of lading accompany the advice of the drafts.

Requesting you by a few lines to apprise [advise] Messrs. Henry Rodewald & Co. of the opening of the credit, and assuring you that your drafts for reimbursement *to a point* to be drawn on me at the maturity of your acceptances will be promptly honored. I remain," &c.

This letter was received 17th of January, 1860. The plaintiffs consented to open this credit, and on the same day, in conformity with the request of the defendant, apprised, by letter, the firm of H. Rodewald & Co., in New Orleans, of this credit being opened by the defendant with the plaintiffs, and accepted by them, and also on the same day apprised the defendant by letter that they, the plaintiffs, had granted the credit. On the 1st of February, 1860, Messrs. H. Rodewald & Co., at New Orleans, who were to use this credit, sent a letter of advice to the plaintiffs that they had drawn on them under the letter of credit, which letter reads:

"New Orleans, Feb. 1, 1860.

Gentlemen : We are in receipt of your favor of 17th inst. confirming a credit opened with you by Mr. Wm. Ed. Quentell, Bremen, in our favor for $50,000.

We took the liberty to-day to value on acct. of this credit in our dft. No. 3255, 60 dys. o. order, $3000, which you will please protect and reimburse yourself on Mr. Quentell at maturity.

Yours respectfully,    HENRY RODEWALD & Co."

On the same day, 1st February, 1860, this firm drew their bill of exchange for $3000, at sixty days' sight on the plaintiffs, which was accepted by the plaintiffs on 8th February, 1860, and paid at maturity. On the 4th February, 1860, Rodewald & Co. addressed a second letter to the plaintiffs, advising them of the two other drafts for $2500

each, drawn by them on account of said credit opened by the defendant.

This firm drew these two drafts, as advised, at sixty days' sight for $2500 each, and negotiated them. The plaintiffs accepted these drafts 10th of February, 1860, and paid them at maturity. On the 7th of February, 1860, H. Rodewald & Co. addressed another letter to the plaintiffs, advising them that they had drawn five other bills of exchange for $5000 each, at sixty days' sight, under the credit opened by Quentell.

The plaintiffs accepted these five bills, and paid the same at maturity. The plaintiffs, by their letter of 10th of February, 1860, advised the defendant that H. Rodewald & Co. had drawn on them the three drafts first mentioned; and on the 10th April, 1860, by letter, advised the defendant that they had drawn on him for reimbursment of the payment of the three drafts, together with the expenses and commissions; and on the 18th of April, 1860, by letter, they advised him that they had drawn on him for reimbursement for the payment of the five drafts last mentioned for $25,000, together with expenses and commissions; but the defendant refused to pay the plaintiffs any reimbursements for their having paid the drafts of H. Rodewald & Co. mentioned.

The plaintiffs brought this suit to recover for their outlay and payment of the several eight drafts. On the trial, they proved the letter of credit and the letter of advice of H. Rodewald & Co., and desired to put in evidence the bills of exchange drawn in accordance with the letter of credit and letter of advice, but the court ruled the several bills of exchange out, as not being within the letter of instructions; to which ruling the plaintiffs' counsel excepted. The court required that the plaintiffs should first prove that the several bills were actually drawn against shipments consigned to the defendant; the plaintiffs did

Gelpcke *v.* Quentell.

not furnish such proof; the bills of exchange offered were excluded, and the complaint was dismissed.

*B. Roelker,* for the appellant.

I. The contract of the defendant, contained in his first letter, was an original, and not a collateral undertaking, or guaranty. The main purpose and object of the promissor, the defendant, was not to answer for the debt of another, but to subserve some pecuniary or business purpose of his own, involving a benefit to himself, namely, a loan or advance of money by the plaintiffs to the defendant himself, through his agents in New Orleans, who were to procure or make consignments to him, on which advances were to be made; and this loan to him by the plaintiffs, the defendant promised to pay back himself to the plaintiffs. The defendant, and not his agents, Rodewald & Co., became the debtor to the plaintiffs. (*Emerson* v. *Slater,* 22 *How. U. S.* 28, 43. *Lawrason* v. *Mason,* 3 *Cranch,* 492. *Nelson* v. *Boynton,* 3 *Metc.* 400. *Alger* v. *Scoville,* 1 *Gray,* 391.) In this respect the case at bar is essentially different from the case of *Birckhead* v. *Brown,* (5 *Hill,* 634, 644; *S. C.,* 2 *Denio,* 375,)

II. The words in the defendant's letter, "this credit is intended for advances on consignments of merchandise to my address," are words of information, and not of instruction, or part of a mandate; they do not form a condition precedent, and only *motive* the following words, "and you will please to keep the same in force for the coming year 1860," by which words he intends to show that it is to be a continuous credit for one year, and shall not be considered exhausted by advancing only once the sum of $50,000. This meaning becomes evident from the words added, "it is, however, not required that bills of lading accompany the advice of the drafts," and the further request made to advise Rodewald & Co. that this credit of $50,000 is opened by the plaintiffs, and that Rodewald & Co. are authorized

to draw to this amount. This is the natural interpretation of the letter of instructions of the defendant. If there be any doubt, the general rule in the interpretation of contracts applies, that the words of the instrument shall be taken most strongly against the party employing them. This rule has especially been applied to letters of credit and of guaranty. In *Douglas* v. *Reynolds*, (7 *Peters*, 113, 122; 10 *Cond. R.* 420,) the court says: "As these instruments are of extensive use in the commercial world, upon the faith of which large credits and advances are made, care should be taken to hold the party bound to the full extent of what appears to be his engagement, and for this purpose it was recognized by this court in *Drummond* v. *Prestman*, (12 *Wheat.* 515,) as a rule in expounding them, that the words of the guaranty are to be taken as strongly against the guarantor as the sense will admit; and the same rule was laid down in the King's Bench, in *Mason* v. *Pritchard*, (12 *East*, 227.) (*See also Bell* v. *Matthias*, 1 *How.* 160; *S. C., Cond. R.* 552, 559; *Dick* v. *Lee*, 10 *Peters*, 493.) And in *Lawrence* v. *McCalmont*, (2 *How.* 445,) Judge Story, speaking of the interpretation of letters of credit and guaranty, says: "Indeed if the language used be ambiguous, and admits of two fair interpretations, and the guarantee has advanced his money upon the faith of the interpretation most favorable to his rights, that interpretation will prevail in his favor; for it does not lie in the mouth of the guarantor to say that he may, without peril, scatter ambiguous words, by which the other party is misled to his injury." (*See also Walrath* v. *Thompson*, 4 *Hill*, 200; *Ulster County Bank* v. *McFarlan*, 3 *Denio*, 565; *Gates* v. *McKee*, 13 *N. Y.* 235, *per Denio, J.*) The case of *Greele* v. *Parker*, 5 *Wend.* 414; *S. C.*, 2 *id.* 545,) shows what the courts will not consider as a condition precedent. This was an action by *Parker* v. *Greele* as the acceptor of a bill of exchange, drawn by one Stone on Greele. Greele wrote to Stone, "I have no objections to accepting for you

Gelpcke *v.* Quentell.

at three and four months, for $2500, on the terms you propose." It was held that Parker could recover against Greele on the acceptance contained in the letter, without showing what were the terms proposed, adverted to in the letter, or a compliance with them. *The Bank of Michigan* v. *Ely,* (17 *Wend.* 508, 514,) holds that where a principal authorizes his agent to draw, " if he wants more funds," it is not for him to set up an abuse of this discretion, to avoid the obligation; unless it be brought home to the plaintiffs, of which there is no pretense here. To the same effect is *Burns* v. *Rowland,* (40 *Barb.* 368.) In the case at bar, the defendant does not state that the plaintiffs should accept and pay the bills drawn by Rodewald & Co., provided they were drawn against shipments, but only provided they were drawn at sixty days' sight, and did not exceed the sum of $50,000. In the case of *Schimmel-pennich* v. *Bayard,* (1 *Pet.* 264,) the sending in of bills of lading was made a condition precedent for making advances on consignments. This case shows also how far a principal is bound by the acts of his agent.

III. It is evident it was not intended by the defendant that the plaintiffs should see to it that the bills were drawn against shipments; because the defendant, in his letter of December 24th, requested the plaintiffs to advise Rodewald & Co. that the credit was opened in their favor, to be used by them, sixty days' sight drafts. The plaintiffs did so by their letter of January 17th, and therein they conformed precisely to the very letter of their instructions. The words of confirmation contained in their letter, at the end, "in confirming this credit," &c., added nothing to its import. Had these words been omitted, the idea which they express would have been a necessary implication. *Expressio eorum quae tacite insunt nihil operatur.* (*Wingate's Maxims, No.* 66. *Broom's Leg. Max. p.* 519.) If the plaintiffs had written, "Mr. Quentell has opened a credit with us in your favor, to be used by you by sixty

days' sight drafts on us; the credit is intended for ad-
vances on consignments of merchandise addressed to him,
but that no bills of lading need accompany your letters of
advice; the whole amount running and unpaid shall not
exceed $50,000, the credit to be in force for the year 1860.
Mr. Quentell will reimburse us for the amounts we pay on
your drafts, together with all expenses;" such a letter
would have had the necessary import that Rodewald & Co.
were authorized to draw on the plaintiffs, and that the
plaintiffs would accept the bills. Such a letter would be
of the same import as that passed upon by the court in
*Ulster Bank* v. *McFarlan*, (5 *Hill*, 232.) By addressing this
letter, at the request of the defendant, to Rodewald & Co.,
the plaintiffs became bound to the latter to accept their
drafts, or they would subject themselves to an action for
damages for not accepting them. The plaintiffs had the
right, and were bound to accept, all bills presented, which
appeared to be drawn conformably to the instructions, un-
less provided with indemnity, or furnished with evidence
of ill faith on the part of Rodewald & Co. (*Boyce* v. *Ed-
wards*, 4 *Peters*, 3. *Ontario Bank* v. *Worthington*, 12 *Wend.*
593, 598. *McEvers* v. *Mason*, 10 *John.* 215. *Pillans* v.
*Mierup*, 3 *Bur.* 1663, 1669. *Story on Bills*, § 269. 1 *R. S.*
768, § 10, *Edm. ed. p.* 768. *Johnson* v. *Clark*, 39 *N. Y.* 216.
*Barney* v. *Worthington*, 37 *id.* 112, 116. *Blakiston* v. *Dud-
ley*, 5 *Duer*, 378, 575.) The defendant is therefore bound
to indemnify the plaintiffs from all the legal consequences
of their compliance with his request.

IV. The legal relations of the parties to a letter of
credit are the same as those of principal and agent,
*mandator* and *mandatory*, and all the rights and obliga-
tions of either are determined by the rules of the law of
agency. In the continental jurisprudence of Europe, in
France, Germany and other states, the law applicable to
letters of credit is treated of under the head of "man-
date." In the case at bar, the defendant Quentell is the

Gelpcke *v.* Quentell.

mandator, and the plaintiffs are the mandatories, and the letter of credit of the defendant was the power of attorney or mandate. The rule in regard to the interpretation of such powers has been recognized to be, that if a power be ambiguous, and is reasonably construed by the agent, the principal is bound, though it should prove not to have been the construction intended by the principal. (*Le Roy* v. *Bayard,* 8 *How. U. S.* 491.) The agent may do what seems from the instrument plausible and correct, and though it turn out in the end to be wrong as understood by the principal, the latter is still bound by the conduct of the agent. If language be ambiguous, so as to mislead, the injurious consequences should fall on the principal for not employing clearer terms. (*Lomax* v. *Cartwright,* 3 *Wash. C. C.* 156. *Story on Agency,* §§ 72, 74, 75.) If the defendant intended that the plaintiffs should accept and pay only bills drawn against consignments made or procured by his agents in New Orleans, and that the plaintiffs should see to it that they were so drawn, he, the defendant, ought to have stated so, distinctly, in his letter, and made it a condition precedent, and he ought not to have deprived the plaintiffs of the only means, the bills of lading, by which they could ascertain such a fact. The plaintiffs had the right and were bound to accept the bills when presented, because the bills were apparently in all respects in conformity with the instructions of the defendant.

V. Even though the bills of exchange, drawn by Rodewald & Co., the agents of the defendant, were not drawn against consignments, but were apparently drawn in conformity with the letter of credit, and apparently within the scope of the agency of Rodewald & Co., and the plaintiffs did not know otherwise but that they were so drawn, the plaintiffs had a right to presume that they were drawn against consignments, and that they were bound to accept and pay them. It is a general rule that

he who employs an agent shall lose by his fraudulent, negligent or illegal act, rather than an innocent person. The court, in *Dunning* v. *Roberts*, (35 *Barb.* 463,) says: "It is a universal rule based on principles of policy, propriety and justice, that if a principal put his agent in a condition to impose on innocent third persons, by apparently pursuing his authority, he shall be bound by his acts. By employing him, he warrants his competency, fidelity, and good conduct in all matters within the scope of his agency."

And it it is said by Allen, J., in *Johnson* v. *Jones*, (4 *Barb.* 369, 373,) "an agent may bind his principal within the limits of the authority with which he is apparently clothed with respect to the subject matter. The liability of a principal is rather to be determined from the authority he allows his agent to assume, than from that which the agent actually receives." (*See Story on Agency*, §§ 130–133; *Perkins* v. *Wash. Ins. Co.* 4 *Cowen*, 645; *Com. Bank of Lake Erie* v. *Norton*, 1 *Hill*, 501.) In the case at bar, the plaintiffs were not bound to see to it, whether the agents of the defendant, Rodewald & Co., properly applied the advances or not, that is, whether they used them for advances on consignment of goods to the defendant. Rodewald & Co. were to act solely under the instructions of Quentall, which instructions the plaintiffs had nothing to do with, and as long as the plaintiffs paid *bona fide* bills of Rodewald & Co., which were apparently drawn within their power, the defendant became liable to the plaintiffs, though Rodewald & Co. applied the funds contrary to the instructions of their principal, Quentell. (*Cremer* v. *Higginson*, 1 *Mason*, 323, 335.)

VI. The letters of advice of Rodewald & Co. state explicitly and represent that the drafts mentioned were drawn on account of the credit opened by the defendant, and these agents of the defendant have thereby in each case made a representation as to a fact essential to their

power, upon the faith of which the plaintiffs have acted, and the defendant, the principal, is precluded from controverting the faith so represented, and he is estopped by the representation of his agents, Rodewald & Co., from disputing facts which show that the act was authorized. (*Griswold* v. *Haven*, 25 *N. Y.* 595, 603. 16 *id.* 136.) Since the letters of advice of Rodewald & Co. refer to the credit opened by Quentell, it is in effect the same as if the letters of Quentell and the plaintiffs had been set out in full, and Rodewald & Co. desired the advances for Quentell in conformity with his construction. Bronson, J. in *Birkhead* v. *Brown*, (5 *Hill*, 639,) says: "It is neither usual nor can it be necessary for business men to make express reference, in every new communication, to that which has gone before; nor can it be necessary in making new modifications of an existing arrangement, to repeat the terms of the original agreement. These letters must all be read and construed together, as forming but one contract or arrangement." The plaintiffs had all reason to suppose from the representations of Rodewald & Co., in their letters of advice, that the bills were drawn in conformity with their power and the design of Quentell, and the latter had prevented them from ascertaining whether these representations were true or not, by withholding from them the bills of lading.

VII. The defendant would be estopped from denying that the bills of exchange, drawn by his agents Rodewald & Co., were actually drawn for advances on consignments addressed to the defendant, because the bills were drawn within the apparent authority of Rodewald & Co., and the plaintiffs were not bound to inquire into the facts *aliunde.* The rule of law controlling all these cases is laid down in the case of *The North River Bank* v. *Aymar*, (3 *Hill*, 262,) where Cowen, J. says: "Whenever the very act of the agent is authorized by the terms of the power, that is, whenever, by comparing the act done by the agent with

the words of the power, the act is in itself warranted by the terms used, such act is binding on the constituent, as to all persons dealing in good faith with the agent. Such persons are not bound to inquire into facts *aliunde;* the apparent authority is the real authority." In the case of *The Farmers and Mechanics' Bank* v. *Butchers and Drovers' Bank,* (16 *N. Y.* 125, 135,) Selden, J. says : " It is, I think, a sound rule, that where the party dealing with an agent has ascertained that the act of the agent corresponds, in every particular, in regard to which such party has, or is presumed to have, any knowledge, with the terms of the power, he may take the representations of the agent as to any extrinsic fact which rests peculiarly within the knowledge of the agent, and which cannot be ascertained by a comparison of the power with the act done under it." (*See also, Griswold* v. *Haven,* 25 *N. Y.* 595, 603 ; *Bank of Genesee* v. *Patchin Bank,* 3 *Kern.* 309.)

VIII. The bills of exchange offered in evidence at the trial were improperly excluded as not within the instructions of the defendant. The judgment should be set aside, and a new trial ordered.

*M. S. Bidwell,* for the respondent.

I. The only authority which the plaintiff had to pay bills of exchange drawn by Rodewald & Co. on the defendant's account, was contained in his letter to them, dated 24th December, 1859. That was a special authority ; it constituted them agents for a special purpose, not the defendant's general agents. (*Marius,* 35, 36, 37, *cited in Story on Bills of Exchange,* § 460. *Schimmelpennick* v. *Bayard,* 1 *Peters,* 283.) The plaintiffs could bind the defendant only by a strict compliance with the terms and conditions of this special authority. (*Batty* v. *Carswell,* 2 *John.* 48. *Davenport* v. *Buckland, Lalor's Sup.* 75. *Nixon* v. *Palmer,* 4 *Seld.* 398, 400. *Allen* v. *Ogden,* 1 *Wash. C. C.* 175, 176. *Schimmelpennick* v. *Bayard,* 1 *Peters,* 283, 290. *Mayor of Little*

Gelpcke *v.* Quentell.

*Rock* v. *State Bank*, 3 *Ark.* 227. *Berkley* v. *Watling*, 7 *Ad. & El.* 29. *Alexander* v. *Mackenzie*, 6 *C. B.* 766. *Grant* v. *Norway*, 10 *id.* 665. *Stagg* v. *Elliott*, 12 *id.*, *N. S.*, 373. 1 *Pars. on Ship.* 187, *n.*)

II. This authority is of no greater force or effect than a direction or authority would be if given by the defendant to his clerk in these words: "You may accept bills of exchange drawn on me by Rodewald & Co. for advances on consignments of merchandise to my address, and it is not necessary that the bills of lading should accompany the advice of the bills of exchange." No one can sup- pose that such clerk would be authorized to accept bills drawn by Rodewald & Co., if no consignments of merch- andise had been made to the defendant's address.

III. To sustain this action, therefore, it was necessary for the plaintiffs to show that the bills were drawn against consignments; in other words, to show that the authority had been strictly complied with. The defendant intended to authorize the payment of such bills alone. (*Mason* v. *Hunt*, 1 *Doug.* 297. *Schimmelpennick* v. *Bayard*, 1 *Peters*, 288.)

IV. That this was his intention, is deducible not only from the express language of the letter of credit, and its obvious and natural meaning, but from the nature of the transaction itself. (*Mason* v. *Hunt*, 1 *Doug.* 297.) It would be unreasonable to suppose that the defendant would authorize the plaintiffs to advance $50,000 on his account to Rodewald & Co., unless he received security, especially when the very object of such advance was to procure consignments of merchandise to his address.

V. Rodewald & Co. were under no obligation to under- take the business, but if they did undertake it, they had no right to draw bills on the plaintiffs on the defendant's account, for any other purpose; and if they drew such bills without having procured such consignments, they were guilty of dishonest and fraudulent conduct. And

the plaintiffs had no authority from the defendant to accept or pay any bills except such as were drawn against consignments. The plaintiffs' duty was plain, and could have been peformed without difficulty.

VI. It is true that it was not required that the bills of lading should accompany advice of the bills of exchange. This, however, did not imply that there must be no bills of lading, but the very reverse. It implied that there were to be bills of lading, and this was in perfect harmony with the fact that the bills were to be drawn against consignments. The defendant's letter implied that the bills were to drawn only against consignments, and that there were to be bills of lading, although it was not necessary that they should be forwarded with the letters containing the advice of the bills having been drawn. It would be sufficient to forward them with the bills themselves; a mode of proceeding well calculated to facilitate the sale of the bills of exchange. If the defendant had not stated in his letter to the plaintiffs, that it was not required that the bills should accompany the advice of the bills, and had written merely that the credit was to be used for advances on consignments to his address, would it not have been apparent that Rodewald & Co. would have had no right to draw, unless for advances on consignments to the defendant's address, and that the bills of lading must be sent so as to secure to the defendant the possession and control of such consignment, as otherwise the defendant would have no security for his reimbursement, or for the commissions to which he would be entitled on such consignments. (*Rawls* v. *Deshler*, 3 *Keyes*, 572.) But, in truth, this consent, that the bills of lading might not accompany the bills of exchange, strengthens rather than weakens the defense; for it implies plainly that there were to be bills of lading, and that they were to be sent before the bills of exchange were paid, for otherwise such bills

of lading would be of no service for the defendant's protection.

VII. It was alleged by the plaintiffs, in the complaint, that the bills drawn by Rodewald & Co. were taken by certain persons on the faith of the letter of credit, and for a valuable consideration. But there was no proof of either of these allegations. The case, therefore, is the same as if the bills had been paid by the plaintiffs directly to Rodewald & Co.; or, (as may have been the case,) to their agents.

VIII. Indeed, if the holders of such bills had seen the letter of credit, they would have been informed that Rodewald & Co. had no authority to draw except against consignments. (*Stagg* v. *Elliott,* 12 *C. B., N. S.,* 373.)

IX. But the plaintiffs did prove that they had not committed themselves before they paid the bills. The payments, therefore, were, on their part, voluntary and gratuitous, and were made to persons who do not appear to have been *bona fide* holders for value of such bills of exchange.

X. There was no attempt to prove that consignments had been made to the defendant, and the maxim applies, *de non apparentibus, &c.*

*By the Court,* CARDOZO, J. Whether the ruling of the judge below was right, or not, depends upon the construction to be given to the letter of the defendant to the plaintiffs of the 24th of December, 1859. The question is whether the general authority first conferred by that letter is restricted by the subsequent clause which says: "This credit is intended for advances on consignments of merchandise to my address, and you will please to keep the same in force for the coming year, 1860. It is not, however, required that bills of lading accompany the advice of the drafts." Did this make it the duty of the plaintiffs to see, before they accepted the drafts, that they were

Gelpcke *v.* Quentell.

drawn against consignments made to the defendant's address. I think not. It seems to me that the clause of the letter relied upon to limit the authority to accept, to drafts drawn against consignments to the defendant, has not that effect. Its purpose was to inform the plaintiffs of the reason which induced the defendant to have the same kept in force for a year. But the defendant showed that he did not mean to charge the plaintiffs with the duty of seeing that the drafts were drawn against consignments, by informing them that it was "not required that bills of lading should accompany the advice of the drafts." Instruments of this character should be construed as the parties to whom they are addressed might fairly and reasonably be expected to understand them. It seems to me that the only reasonable meaning of this paper is, that the plaintiffs were not called upon to have the bills of lading when they accepted the drafts; and if this construction be right, then, clearly, the information contained in the letter was not intended to make it the duty of the plaintiffs to ascertain that the drafts were drawn against consignments; because the very means of so ascertaining were dispensed with, and when drafts apparently within the authority were presented to them they had no alternative but to accept them. That the clause "it is, however, not required that bills of lading should accompany the advice of the drafts," should be construed as dispensing with the necessity of the bills of lading accompanying the drafts themselves, seems to me to follow from the consideration that it should be construed, as I have said, as the parties to whom it was addressed would be likely to understand it. Now, I cannot see how the plaintiffs could have understood the defendant as merely meaning that they might dispense with something which was only for their accommodation and convenience, and in which the defendant had no interest at all. The advice that drafts were on their way was a matter that could make no

difference to the defendant, but might be a matter of convenience to the plaintiffs, to enable them to be prepared to accept the drafts. For the defendant to say to them, I dispense with that which does not concern me, but which you have the right according to mercantile custom to expect, would be meaningless and absurd; but if he said, I do not require you to exact that bills of lading should accompany the drafts, then it would have some meaning and effect. In that way, I think, his letter should be read; and so read, there seems to me to be no doubt that the plaintiffs, acting in good faith, were not bound to ascertain that the drafts which were apparently within the terms of the authority, were, in fact, drawn against actual consignments to the address of the defendant. For these reasons, I think the ruling below was erroneous, and that the judgment should be reversed and a new trial ordered; costs to abide the event.

[FIRST DEPARTMENT, GENERAL TERM, at New York, April 4, 1871. *Ingraham*, P. J., and *Cardozo* and *Geo. G. Barnard*, Justices.]