HENRY GELPCKE and others *vs.* WILLIAM E. QUEN-
TELL.

On the 24th of December, 1859, Q., by a letter of credit dated at Breman, ad-
dressed to the plaintiffs, at New York, opened an account with the latter in
favor of R. & Co. of New Orleans, for $50,000, to be used by sixty days sight
drafts, "for advances to be made on consignments of merchandise" to Q.'s
address. On the 17th of January, 1860, the plaintiffs, by letter, informed
R. & Co. that Q. had opened a credit with the plaintiffs in favor of R. & Co.
for that amount, to be used by the drafts of R. & Co. at sixty days sight
"against shipments of consignments to the address of Q." The letter con-
firmed the credit, and promised that the drafts of R. & Co. should meet with
prompt protection. *Held*, that the drafts which, under this letter, would
fall within the plaintiff's promise to accept, must be drafts at sixty days'
sight, and must be against *shipments of consignments* to the address of Q.;
and that the promise to accept did not include drafts of R. & Co. drawn to
pay their own previously dishonored drafts upon other parties, in favor of
the person to whom those last drawn were delivered. That the holder of
the last drafts had notice that they were not drawn within the instructions
given by the plaintiffs.

And in an action by the plaintiffs against Q. for reimbursement of the amount of
drafts which they had accepted and paid; *Held* that the defendant had a
right to show that the drafts were not of the kind which the plaintiffs were
bound to accept.

*Held, also*, that an acceptance of a draft drawn by R. & Co., after a revocation
by Q. of the plaintiff's authority to accept, and notice of such revocation to
R. & Co. could not stand alone upon the revoked authority, but must have,
connected with it, such extraneous circumstances as would show that the
plaintiffs had the right to charge Q. notwithstanding his recall of the letter
of credit, and that upon that question the burden of proof was upon the
plaintiffs.

EXCEPTIONS directed to be heard in the first in-
stance at General Term.

*By the Court*, DAVIS, P. J. When this case was here
before, the only question presented arose upon the con-
struction to be given to the following clauses of defen-
dant's letter of 24th December, 1859 : "This credit is
intended for advances on consignments of merchandise
to my address, and you will please keep the same in force
for the coming year 1860. It is not, however, required,

that bills of lading accompany the advice of the drafts." The court held that the latter of these clauses operated to dispense with the necessity of the bills of lading accompanying the drafts, and thereby relieved the plaintiffs from the duty of inquiring whether drafts presented to them were in fact drawn against consignments of merchandise to defendant's address.

On that trial the court "required that the plaintiffs should first prove that the several bills were actually drawn against shipments consigned to the defendant," and the plaintiffs not having given such proof their complaint was dismissed. (*See case reported* 59 *Barb.* 250, 252.) That decision fully, and, as we think, correctly, settles the law of the case, upon the question then presented.

Upon the trial of the case now under review, it appears that on the 18th of January, 1860, the defendant wrote to the plaintiffs, from Bremen, a letter recalling his former letter of credit, and revoking the authority of the plaintiffs to accept the drafts of Rodewald & Co., and requesting the plaintiffs to communicate to Rodewald & Co. the revocation. This letter contains the following clauses: "If, however, in the meantime, up to the arrival of this letter, acceptances should have been made against it, this, as a matter of course, is for my account, and your drafts for reimbursement will be promptly honored on my part."

The letter of revocation was received, it appears, on the morning of the 6th of February, 1860, and on the same day the plaintiffs wrote to Rodewald & Co. informing them that according to instructions that morning received from the defendant, the credit opened in their favor had been recalled, and was therefore cancelled. This letter was sent on the same day, *by mail*, to New Orleans. None of the drafts in suit had at that time been accepted by the plaintiffs. On the 8th of February, a draft of $3,000, drawn at New Orleans on

the 1st of February, was presented and accepted. On the 10th of February drafts for $5,000, drawn on the 4th of February, were presented and accepted, and on the 13th of February, five drafts of $5,000 each, drawn on the 7th of February, were presented and accepted. The several acceptances were paid at maturity by plaintiffs, and the defendant refused to refund plaintiffs, on the ground that the acceptances were made after the revocation of their authority.

The recall of the letter of credit and consequent revocation of the authority of the plaintiffs to accept, was complete on the 6th day of February, at which time the letter of the defendant, written for that express purpose, was received. An acceptance subsequent to such revocation cannot stand alone upon the revoked authority, but must have connected with it such extraneous circumstances as show that the plaintiff had the right to charge the defendant by their acceptance, notwithstanding his recall of the letter of credit. When called upon to respond the defendant had a right to say your acceptances were made after I had revoked your power; and to this there could be but one answer: " We were bound to accept because we had put ourselves, in pursuance of your letter and directions, in a position which was in law equivalent to an acceptance, or which would subject us to damages for refusing to accept." If the plaintiffs establish this position their right to be made good by defendant is clear; but it is one upon which, in my judgment, the plaintiffs hold the affirmative. They assert a right to exercise an authority after its revocation, and must show the facts which justify the assertion.

To do this it was necessary to establish that what had taken place between themselves and Rodewald & Co. was of such a character that parties who had received the drafts of the latter firm upon the plaintiffs had a legal right to insist upon an acceptance, or to sue as

upon an acceptance, or for damages for non-acceptance. In short, it was their duty to be able to show that notwithstanding the revocation their relations of legal liability to the holders of the several drafts in question were such that the subsequent accceptance was equivalent, in its operation on the obligation of the defendant towards them, to one made before the recall of authority. The court erred in holding that the plaintiffs were not bound to show that state of facts; but as this case is presented we may properly look at all the facts proved or conceded, to see whether upon them sufficient appeared to justify the recovery.

It was shown that after receiving the letter of the defendant by which the credit to be drawn against, was created in which the defendant indicated that the drafts were to be drawn against consignments of merchandise, but relieved the plaintiffs, as the court has held, from the duty of inquiring whether drafts presented under the authority had been so drawn, the plaintiffs wrote to Rodewald & Co. advising them of the credit. Their letter is as follows:

"New York, 17th January, 1860.

Messrs. Henry Rodewald & Co.,

New Orleans, La.:

We hereby have the pleasure to inform you that our mutual friend, Wm. Ed. Quentell, Esq., of Bremen, has opened a credit with us in your favor, for the sum of $50,000—say fifty thousand dollars, to be used by your drafts, sixty days' sight, against shipments of consignments to the address of said friend. In confirming this credit, we hope you may have soon occasion to make use of it.

Your drafts will meet with prompt protection.

Meanwhile, we are, gentlemen,

Yours respectfully,

Gelpcke, Keutgen & Reichelt."

This letter, so far as the case discloses, contains the

Gelpcke *v.* Quentell.

only authority conferred by the plaintiffs on Rodewald & Co. to make the drafts in question, and in it is to be found the only obligations of the plaintiffs, express or implied, which Rodewald & Co. as drawers could communicate to parties purchasing or receiving their drafts, and upon which the latter could claim to base a promise to accept, enforceable against the plaintiffs. It is essential, therefore, clearly to understand what drafts drawn under this letter would fall within the plaintiffs' promise to accept which the law will find in this letter or imply from its contents. It is apparent, as it seems to me, that they must be drafts at sixty days' sight, and must be against shipments of consignments to the address of the defendant. We are seeking now for the promise of the plaintiffs made to Rodewald & Co. and upon which the holder of a draft, drawn by that firm, may stand to enforce it against the plaintiffs *because of the promise*— asserting that he received it in reliance upon the promise and therefore may legally claim acceptance.

One who was simply told by Rodewald & Co. that they had the authority to draw may perhaps claim the benefit of whatever promise the actual authority contained, although he did not in fact see it; but can he claim any more than the authority would have disclosed to him if shown to and read by him? The holders of the drafts must be deemed to have seen and acted upon the letter; for their waiver or neglect to see it cannot interject another promise than those actually contained in or implied from it. When Rodewald & Co. drew the drafts for $25,000 which it appears in the case were made to pay a like amount of their own previously dishonored drafts upon other parties in favor of the person to whom these were delivered, nothing more could be claimed by that drawee, as against the plaintiffs, than that he saw and acted in full reliance on their letter to his drawers. He must therefore be held to have seen that the promise of the plaintiffs to Rodewald & Co. was

Gelpcke *v.* Quentell.

to honor drafts drawn "against shipments of consign-
ments to the address" of the defendant, and he must
be held to have known that his dishonored paper was
not a shipment of that character. If the. plaintiffs had
refused to accept those drafts I can conceive of no
ground upon which the holder could have maintained
his action, under the statue. He had notice that the
drafts were not drawn within the instructions given by
the plaintiffs.

The question now before us is not the one that would
have arisen had the drafts been accepted by the plaintiffs
prior to the revocation of the letter of credit. In that case
the plaintiffs, acting in good faith, could say, as before held
by this court, that they were not bound to inquire whether
the drafts were drawn against consignments of merchan-
dise to the defendant's address, because he had himself
waived that duty. But an acceptance after the author-
ity itself had been revoked must stand upon the ground
of the plaintiffs' personal liability created by the au-
thority with which they had armed the drawers in New
Orleans. I see no good reason why the plaintiffs might
not have required the drafts to be drawn against con-
signments of merchandise to the defendant although he
did not require them to have bills of lading accompany the
drafts ; nor why they might not refuse any draft not so
drawn, because not within their instructions to Rode-
wald & Co. The waiver of accompanying bills of lad-
ing was a personal matter between the plaintiffs and
defendant. It would not have justified the acceptance
of a draft *known to the plaintiffs* not to be drawn against
consignments. Good faith was still required, although
acceptances in good faith without certain evidences of
the character of the draft, were to bind the defendant.
Hence there can be no sound reason, as it seem to me,
why plaintiffs could not limit their obligation to accept
to the very kind of drafts which the defendant advised

them he contemplated, by requiring the drafts which they would accept to be against consignments.

And when the question is one as to what sort of promises to accept the plaintiffs had outstanding at the time of the revocation of the letter of credit, which bound them to go on and accept notwithstanding such revocation, that question is to be solved by the authority they had given, and with reference to which dealers with Rodewald & Co. may be assumed to have acted.

I think the evidence offered by the defendants should have been received, to show that the drafts were not of the kind which the plaintiffs were bound to accept. That the defendant was clearly entitled to a verdict in respect of the five $5,000 drafts drawn on the 7th of February, on the evidence which was received showing the purpose for which the drafts were given. There should be a new trial, with costs to abide the event.

New trial granted.

[FIRST DEPARTMENT, GENERAL TERM, at New York, November 3, 1873. *Davis* and *Ingraham,* Justices.]