EMANUEL MATOUSEK, Respondent, *v.* BANK OF EUROPE TRUST COMPANY, Appellant.

First Department, January 29, 1932.

*Reginald F. Isaacs* of counsel [*Samuel Beinhart* with him on the brief; *Reginald F. Isaacs*, attorney], for the appellant.

*Morris J. Goldston* of counsel [*Lester Lewis Jay* with him on the brief; *Morris J. Goldston*, attorney], for the respondent.

O'MALLEY, J. The oral pleadings of the plaintiff declared on a breach of contract and for money had and received. The answer was a general denial.

The evidence shows that for sometime prior to October 7, 1929, defendant bank had been buying stocks for the plaintiff. Such purchases were made by the defendant through brokers. Payment would be made by plaintiff to the defendant which in turn would make payment to its brokers.

On October 7, 1929, plaintiff ordered defendant to purchase 500

shares of Southwest Stores, Inc. The defendant purchased through Sutro & Kimberley on October ninth. The cost, including the latter's commissions, was $525. Plaintiff on being notified of the purchase paid this sum to the defendant on October tenth, and the defendant immediately remitted to Sutro & Kimberley.

Delivery of the stock to the defendant was delayed until October twenty-fourth, on which date a certificate for 500 shares was tendered to the plaintiff. This tender was refused by plaintiff on the ground that he had previously instructed the defendant that he would not accept the stock and that he had demanded the return of his money. The question presented is whether plaintiff was justified in refusing the tender thus made and demanding of the defendant the return of the purchase price of the stock already paid by it to Sutro & Kimberley.

Plaintiff seeks to recover not only the purchase price, but damages representing the difference between such sum and the market price on the date when the stock should have been delivered. This date, as alleged in the bill of particulars, was October tenth.

The complaint was dismissed and in the absence of specific grounds stated by the trial justice, we must assume that the trial court found as a fact that there was delivery within a reasonable time under all the circumstances of the case.

As bearing upon this issue a consideration of additional facts is necessary. On October fifth, two days before plaintiff gave his order to purchase, and some five days before the defendant remitted to Sutro & Kimberley, Southwest Stores, Inc., had gone into the hands of a Federal receiver. This fact was unknown to either party and plaintiff appears to have received notice of the fact for the first time from the newspapers about October sixteenth. Sales of the stock on the Curb exchange continued until on or about October seventeenth.

In the meantime the defendant had learned of the receivership in its efforts to secure delivery of the stock. It was informed by Sutro & Kimberley that delivery was delayed because of the refusal of the transfer agent to transfer the stock following the receivership.

The evidence clearly shows that the plaintiff at first attempted to secure delivery of the stock. He testified that he called upon the defendant on October twenty-second and asked if the defendant had his stock; that he was told that the stock could not be secured, whereupon he informed the defendant that there had been a delay of twelve days and that he did not want the stock, but wanted his money returned; that he was told to return the following day, when he again asked for the return of his money; that a representative of the defendant, after speaking to someone over the

telephone, told him to come the following day, and that his money would be returned.

Defendant's evidence was to the effect that when plaintiff called he asked either for his stock or his money; that the reason for the defendant's inability to secure delivery was fully explained and that on plaintiff's request for his money the defendant asked Sutro & Kimberley if they would be willing to return the purchase price. To this request Sutro & Kimberley consented conditionally. They sent to the defendant a check to its order for the purchase price of the stock, accompanied by a letter which read: " We return herewith $525, same being the cost of 500 shares of Southwest Stores purchased for your account. We have as yet been unable to obtain delivery on this stock and the broker from whom we purchased same is endeavoring to having [sic] the stock transferred so that he may make this delivery.

" Upon receipt of this stock by us from the seller, we will make delivery to you and expect payment thereof."

Concededly when this letter was shown to the plaintiff he refused to accede to the condition that the stock would have to be paid for if thereafter delivered. The defendant thereupon refused to return the purchase price of the stock. On the twenty-fourth, as already appears, the certificate for 500 shares was in the hands of the defendant and tendered to the plaintiff who refused to accept delivery.

In reversing the judgment in favor of the defendant, the learned Appellate Term took the view that in the circumstances disclosed it was the duty of the defendant to return to the plaintiff the purchase price when received from Sutro & Kimberley.

We are of opinion that the judgment of the trial court was proper and that the reversal by the Appellate Term was erroneous. The plaintiff failed in establishing a breach of contract. The date of delivery as asserted in his bill of particulars was October tenth. There was no evidence to establish an agreement on the part of the defendant to make delivery as of this date. The plaintiff knew from his prior dealings with the defendant that it purchased the stock through brokers and that delivery could not have been made on the date of the payment of the purchase price to the defendant. In the circumstances the defendant's obligation was to deliver within a reasonable time. We are of opinion that on the evidence the trial court was fully justified in finding that delivery within such time was made.

Nor did the plaintiff sustain an action for money had and received. The purchase price returned by Sutro & Kimberley to the defendant was not received unqualifiedly by the latter for plaintiff's

benefit. The defendant had already incurred an obligation with its brokers and as shown by the letter of October twenty-third the money was returned to the defendant upon the condition that it would obligate itself thereafter to receive the stock when tendered.

The defendant under express authority from the plaintiff had purchased the stock and incurred obligations in respect thereto. In such circumstances the plaintiff could not revoke the authority thus given so as to affect acts already done, without indemnifying the defendant. (Mechem Agency [2d ed.], § 564, p. 402, and cases there cited; *Gelpcke* v. *Quentell*, 74 N. Y. 599, revg. 59 Barb. 250; *Terwilliger* v. *Ontario, C. & S. R. R. Co.*, 149 N. Y. 86, 92.) As said in the case last cited: " In case of a naked power, the authority of the agent, derivative and not original, ceases when the principal, for whatever reason, withdraws the delegation and terminates the agency. There is a qualification of the rule where the agent has entered upon the execution of the authority before revocation, and has so bound himself that a retraction of the authority would subject him to liability. In such cases the principal cannot revoke the authority as to the part of the transaction remaining unexecuted, at least not without indemnifying the agent."

It is further to be noted that even upon the plaintiff's theory there was not a complete revocation of the defendant's agency. It was continued for a limited purpose at least. While the plaintiff's position was that he no longer wanted the stock but desired his money, he constituted the defendant his agent to secure its return. The defendant in securing a conditional recovery acted within the scope of the authority so given. It could not, therefore, be placed in jeopardy for failure to secure rescission of a transaction completed under full authority and before its revocation.

It follows that the determination appealed from should be reversed, with costs and disbursements to the appellant in this court and in the Appellate Term, and the judgment of the Municipal Court affirmed.

FINCH, P. J., McAVOY, MARTIN and TOWNLEY, JJ., concur.

Determination appealed from reversed, with costs and disbursements to the appellant in this court and in the Appellate Term, and judgment of the Municipal Court affirmed.