HERMAN GELPCKE et al., Appellants, *v.* WILLIAM E. QUENTELL, Respondent.

(Argued February 21, 1878; decided June 4, 1878.)

THIS was an action to recover advances alleged to have been made by plaintiffs, under authority of a letter of credit issued by defendant. Defendant was, in 1859 and 1860, a merchant and banker at Bremen; plaintiffs were partners, doing business as bankers in the city of New York, and the firm of Rodewald and Co. were doing business in the city of New Orleans. On the 24th December, 1859, defendant sent from Bremen to plaintiffs, at New Nork, the letter in question, the material portion of which is as follows:

"I take the liberty to open a credit with your house for my account, in favor of Messrs. Henry Rodewald & Co., in New Orleans, for the amount of $50,000 — say fifty thousand dollars — to be used by sixty days' sight draft. This credit is intended for advances on consignments of merchandize to my address, and you will please to keep the same in force for the coming year, 1860. It is, however, not required that bills of lading accompany the advice of the drafts.

"Requesting you, by a few lines, to apprise (advise) Messrs. Rodewald & Co. of the opening of the credit, and assuring you that your drafts for reimbursement to a point to be drawn on me at the maturity of your acceptances, will be promptly honored."

This letter was received by plaintiffs January 17, 1860, and upon the same day they wrote to Rodewald & Co. as follows:

"We hereby have the pleasure to inform you that our mutual friend, Wm. Ed. Quentell, esq., of Bremen, has opened a credit with us, in your favor, for the sum of $50,000 — say fifty thousand dollars — to be used by your drafts sixty days' sight against shipments of consignment to the address of said friend. In confirming this credit we hope you may have soon occasion to make use of it. Your drafts will meet with prompt protection."

The defendant himself wrote to Rodewald & Co. at the

same time he wrote to plaintiffs, and informed them of the opening of the credit.

On January 18, 1860, the defendant wrote to plaintiffs as follows:

"Referring to my letter of twenty-fourth ult., by which I took the liberty of opening a credit with your esteemed house, in favor of Messrs. Henry Rodewald & Co., New Orleans, for $50,000, I find myself to-day induced to recall hereby this credit, since our New Orleans friends would hardly have occasion to make still use of the same. If, however, in the meantime, up to the arrival of this letter, acceptances should have been made against it, this, as a matter of course, is for my account, and your drafts for reimbursement will be promptly. honored on my part.

"Requesting you to communicate with the N. O. house the revocation of the credit, I remain, yours, very truly."

The above letter of revocation was received by plaintiffs in New York, on the morning of February 6, 1860, who, on the same day, wrote to Rodewald & Co. as follows:

"Referring to our respects of the seventeenth, we have to inform you that according to instructions received this morning from Wm. Ed. Quentell, in Bremen, the credit opened by him in your favor for $50,000 has been recalled, and is therefore canceled."

The plaintiff's letter of January 17, 1860, was received by Rodewald & Co. in the latter part of January and prior to February 1, 1860.

On the first, fourth and seventh of February, Rodewald & Co. drew bills upon plaintiffs at sixty days sight, as prescribed by the letter of credit notifying plaintiffs thereof. These were accepted by plaintiffs February eighth, tenth and thirteenth, respectively, and were paid by them at maturity, and defendant notified. He refused to reimburse these advances. *Held*, (RAPALLO, J.; ANDREWS and MILLER, JJ., concurring; CHURCH, Ch. J., and FOLGER, J., dissenting), that defendant could not, by his revocation of the credit, escape liability to indemnify plaintiffs against responsibilities which they had incurred, or require them to violate contracts

which they had made, in pursuance of the letter of credit before notice of the revocation; that as, in pursuance of defendant's instructions, plaintiffs had given credit to Rodewald & Co., and promised to accept their drafts, which credit was outstanding at the time they received the revocation, it was binding upon them, and they were bound to accept the drafts drawn by Rodewald & Co. before they were notified of the withdrawal of the credit thus given them; that although plaintiffs were apprised of the purpose for which the credit was given to Rodewald & Co., yet as the duty was not imposed upon them of seeing that the purpose was carried out, defendant having authorized them to accept and pay drafts without requiring any evidence of the use to which they were applied, and as defendant had deprived them of the means of knowing, by instructions that bills of lading would not accompany the advice of the drafts, it was not incumbent upon plaintiffs to show that the drafts in question were drawn against consignments; that plaintiffs were not bound to construe the revocation as a prohibition against accepting drafts duly drawn before it reached the drawers, and were not required to inquire into the facts of shipments after receipt of the letter of revocation by them any more than they were before.    *Crainer* v. *Higginson*, 1 Mason, 323, distinguished in this, the action there was upon a guaranty of advances to be made to a firm; the decision was, that a dissolution of the firm terminated the guaranty, and that it did not cover acceptances made after notice of dissolution for the benefit of individual members of the dissolved partnership.    In fine, that by the terms of plaintiffs' agreement, which they made on the faith of defendant's implied promise to indemnify, they were bound to accept the drafts; and they were not required to decline to accept after receipt of notice of revocation and take the chances of a defense existing, of which they knew nothing, but were entitled to perform their contract, and look to defendant for indemnity, especially as the reason assigned by defendant for revoking the credit negatived the idea of any apprehension of irregularity or unsoundness

on the part of Rodewald & Co. Plaintiffs' testimony in the case tended to show that there were consignments against which the drafts in question might have been drawn; that there was a surplus of consignments sufficient to cover them, excluding from consideration advances made on blank credits. Defendant and one of the firm of Rodewald & Co. testified that the drafts were not drawn against consignments. Plaintiffs' counsel requested the court to submit to the jury whether or not the drafts were in fact drawn against consignments. This the court refused to do. *Held*, error.

CHURCH, Ch. J., and FOLGER, J., dissenting.

*A. J. Vanderpoel* for appellants.

*William Allen Butler* for respondent.

RAPALLO, J., reads for reversal and new trial.
ANDREWS and MILLER, JJ., concur.
EARL, J., concurs on ground that question of fact should have been submitted to the jury.
CHURCH, Ch. J., and FOLGER, J., dissent.
Judgment reversed.