## THE GERMANIA NATIONAL BANK OF NEW ORLEANS, RESPONDENT, *v.* WILLIAM G. TAAKS AND ALFRED LICHTENSTEIN, APPELLANTS.

*Agreement to pay drafts — when it amounts to an acceptance thereof within* 1 *Revised Statutes* 768, *sec.* 8—*right of a person discounting the drafts to enforce the agreement.*

The firm of Bader & Co., of the city of New Orleans, wrote to the defendants, who resided and were engaged in business in the city of New York, offering to send to them for sale drafts drawn by Bader & Co., on Europe, against sales of cotton, and asking the defendants to allow drafts to be drawn against them in advance, to enable Bader & Co., to make advances to parties for cotton bought, but not received, or to make payments before the shipment was completed or the bills of lading signed. The defendants answered, saying: "We are ready to pay your sight drafts on us which you advise us as having been drawn against particularly to be described shipments, to the extent of $50,000 currency on account of subsequent remittances, which you would then have to send us within a week, whereupon the credit will be renewed of itself." The plaintiff having, upon the faith of this letter, discounted drafts drawn by Bader & Co., upon the defendants, brought this action to recover the amount thereof, upon the defendant's failure to pay them.

*Held*, that the promise of the defendants, contained in the letter, was an uncon ditional one, and operated as an acceptance under section 8, 2 Revised Statutes [6th ed.], 1160.

That the provision as to the amount of the drafts and that they should be drawn against shipments, did not render the agreement to pay con-ditional, but simply imposed restrictions and limitations upon the drawers, a failure to observe which would authorize the defendants to declare the con-tract terminated.

That even if the contract were conditional, yet the plaintiff, upon proving that the conditions had been complied with, or waived by the defendants, was entitled to recover.

APPEAL from a judgment in favor of the plaintiff, entered upon the verdict of a jury.

*Edward Salomon*, for the appellants.

*Edward Lauterbach*, for the respondent.

DANIELS, J.:

The recovery was for the amount due upon two drafts drawn by A. Eimer Bader & Co., of the city of New Orleans, upon the defendants, who were residing and doing business in the city of New York. The drafts were drawn on the 26th of December, 1878, and on that day were presented to, and discounted by, the plaintiff, for Bader & Co., the drawers. They were both made payable at sight, one for the sum of $10,000 and the other for the sum of $15,000. In due course of business they were presented to the defendants for payment but payment was refused, and they were held liable in this action for the payment of the drafts upon a contract previously made between them and Bader & Co. This contract was made by correspondence. The letter proposing it by Bader & Co., was dated on the 2d of March, 1878, and so far as it relates to the contract was in the following language:

"Although the greater portion of our business for this season is finished, and although for this reason the balance of our business will not be so very great, the thought, nevertheless, occurs to us whether it were not possible to open between ourselves a mutual advantageous agreement by which we should forward to you our drafts on Europe, for you to dispose of to the best advantage, and in return reimburse ourselves by drafts on you. One point however, and that a material one, must not be overlooked, namely: That we are allowed by the buyers of our drafts to draw on account of such sold drafts in order to make advances to factors for cotton bought, but not yet received, or to pay invoices to factors before the shipment is completed or bills of lading therefor signed. In the majority of cases bills of lading accompany our drafts to be delivered on acceptance, and we should be pleased to hear what your views are to such an arrangement."

The defendants responded on the seventh of the same month in the following manner:

" To facilitate our intercourse we are ready to pay your sight drafts on us which you advised us as having been drawn against particularly to be described shipments, to the extent of $50,000

currency on account of subsequent remittances, which you would then have to send us within a week, whereupon the credit will be renewed of itself. We charge you seven per cent interest per annum. It will give us pleasure, if the foregoing arrangement. will meet with your approval, and we are convinced that we shall be able to render you advantageous accounts."

And on the twelfth of the same month Bader & Co., by a letter to the defendants, expressed themselves satisfied with the conditions which had been proposed by the defendants.

It has been insisted that as the drafts were not accepted by the defendants, they did not become liable for their payment under the terms of this agreement. The precise objection was that the promise to pay the drafts was not unconditional in its form, and for that reason it did not operate as an acceptance of the drafts under the provisions of the statute. (2 R. S. [6th ed.], 1160, § 8.) By this section an unconditional promise in writing to accept a bill before it is drawn is to be deemed an actual acceptance of it in favor of every person who, upon the faith thereof, shall have received the bill for a valuable consideration. And an agreement to pay has been considered and acted upon by the court as sufficient to comply with the requirements of this section of the statute.

By the evidence which was given, the fact was proven that the plaintiff received the drafts upon the faith of the contract mentioned in the defendants' letter, and for them paid a valuable consideration. Their case was therefore within the provision of the statute if the agreement was unconditional in its character. It has been strenuously urged that it was not so, for the reason that the drawers of the drafts were placed under an obligation to advise the defendants that they were drawn against particularly to be described shipments, and on account of the subsequent remittances which the drawers were to send to the defendants within a week. But the contract which was expressed in the responsive letter of the defendants did not present these qualifications as conditions to the performance of their agreement to pay the drafts. They were simply restrictions or limitations required to be observed by the drawers, and upon their observance they were at liberty to draw to the extent of $50,000 in currency. The language which was made use of to apprise the drawers of the intention of the defendants, in no man-

ner expressed or indicated the obligation they were willing to assume, to be conditional in its nature. Their contract was to pay the sight drafts drawn by Bader & Co. upon them to the extent of $50,000 currency, on receiving the advices mentioned by them, and upon the weekly credit which they stipulated to give. Of course, if the drawers failed to observe the stipulations required to be performed by them, the defendants would be at liberty to declare the contract at an end and discontinue all further dealings with the drawers of the drafts. And this is a right which every party has to a contract when the other party fails to observe its terms upon his part. The stipulations did not render the agreement to pay the sight drafts conditional, but it imposed restrictions and limitations upon the drawers which, if they failed to observe, the defendants would be at liberty to declare the contract at an end. In *Ulster County Bank* v. *McFarlan* (5 Hill, 433), the authority given to the drawers of the draft was subjected to the proviso that the whole amount running and unpaid should not exceed $3,000, and the credit should be good for only one year from date. And yet it was held sufficient to comply with the terms of the statute to render the defendant liable upon the agreement. And similar views were declared in *Barney* v. *Worthington* (37 N. Y., 112). In *Johnson* v. *Clark* (39 N. Y., 216) the authority was not without qualification, and yet it was held still to be sufficient to render the party giving it liable upon the paper drawn. In *Merchants' Bank of Canada* v. *Griswold* (72 N. Y., 472) the drawer was authorized to make drafts on the defendant from time to time as might be necessary, for the purchase of lumber for his account and to consign the same to the care of P. W. Scribner & Co. But these restrictions were not allowed to deprive the bank, to which the draft had been negotiated, of its right to maintain an action for the recovery of the amount against the defendant giving the authority. It was held, notwithstanding these qualifications, that the authority to draw was not conditional and that the defendant was therefore liable. *Gelpcke* v. *Quentell* (74 N. Y., 599) also sustains the same view.

But if the letters did not create an unconditional obligation to accept and pay the drafts, they still subjected the defendants to the obligation to pay subject to the conditions insisted upon. And if the drawers had not failed to comply with such conditions, the

obligation remained in full force against the defendants. The power of parties to contract for the payment of paper of this description is not restricted to the form mentioned in the statute; but they may create a liability for such payment against themselves by any valid contract which they may enter into. And such a contract will inure to the benefit of any party afterwards receiving the paper upon the faith of it. For the object of a contract of this description is to give the persons drawing the drafts a credit which will enable them to negotiate the paper upon the faith and reliance of its performances. And when it may be entered into in such a form as to create the obligation for payment, the party taking the paper for value and in good faith upon its credit will be at liberty to enforce the contract by action for his, or its, protection and indemnity. The contract, under such circumstances, is made in part for the benefit of the party receiving the paper upon the faith of it. And to enforce the liability incurred, he or it may maintain any appropriate action under the authority of the rule settled by *Lawrence* v. *Fox* (20 N. Y., 268); *Burr* v. *Beers* (24 id., 178); *Coster* v. *Mayor of Albany* (43 id., 399), where it is stated that "it is settled in this State that an agreement made on a valid consideration by one with another to pay money to a third can be enforced by the third in his own name" (Id., 411, and *Scott* v. *Pilkington*, 15 Abb., 280), proceeded upon the correctness of this statement of the legal principle.

If, therefore, the agreement entered into was conditional, and for that reason not within the language of the statute, and it still imposed the obligation upon the defendants to pay these drafts, they were properly held liable to that extent in this action. The mere form of the agreement for this purpose is not so important as its substance and effect. By their letter the defendants did obligate themselves to pay the sight drafts of Bader & Co., which they should be advised were drawn against shipments, and for which the drawers were entitled to credit for one week.

It has been objected under the evidence that the drawers had been in default in their remittances for upwards of a week before these drafts were drawn. But the evidence given by one of the defendants himself does not sustain this fact. His testimony is that Bader & Co. had drawn preceding drafts amounting to the sum of $25,000, and had paid by the proceeds of cotton drawn against in

favor of the defendants, the sum of $10,000, thereby reducing the indebtedness to $15,000. The draft for that was drawn on the 19th of December, 1878, but it did not reach New York and was not paid by the defendants until the twenty-third or twenty-fourth of that month. By the terms of the original letter of the defendants to Bader & Co., the latter were entitled to one week to reimburse this payment by means of remittances, even if they were not previously at liberty to draw to the full extent of $50,000 currency before that obligation could truly be said to arise. And as the drafts in suit were both drawn and discounted on the 26th day of December, 1878, there was no such default on the part of the drawers as would entitle the defendants to refuse payment of these drafts on account of the existence of this indebtedness.

It has also been objected that no advices were forwarded by the drawers showing that these drafts had "been drawn against particularly to be described shipments." And as a matter of fact the defendants seem to be correct in this objection, for the letter of advice, which was written upon the same day as the drafts were dated, simply stated that the drawers were engaged with shipments, which evidently at that time had not been made. But the defendants are not entitled to be relieved by reason of this circumstance, for the drawers of the drafts had previously applied to them for indulgence, relieving them from a strict observance of this obligation. This was done by their letter of the 22d of October, 1878, in which they presented the following request: "We hope that in exceptional cases you will not insist on the strict fulfillment of the condition that our drafts shall be covered within a week by remittances, as cases may arise where, owing to unfavorable weather or other unforeseen circumstances, it would be beyond all possibility for us to obtain the documents in the required time." And to that the defendants responded on the the twenty-fifth of the same month in the following manner: "In regard to the covering of your checks within a week, we would add that in exceptional cases we shall meet your wishes in so far that we shall not hold ourselves strictly to the letter; but we request that you avoid such cases if possible."

And the evidence which was given presented this as an exceptional case within the language so employed by the defendants.

For it was made to appear as a fact that the drawers of the drafts were engaged in obtaining the cotton for shipment, upon which they might be able to remit paper to the defendants of the description of that contained in their letter of the seventh of March, but had been prevented finally from consummating the business by the fact that Bader committed suicide on the day following the date of the draft, and by that circumstance an end was put to the business of his firm, which at that time proved to be insolvent. That this was an exceptional case within the language of defendants' letter, was stated in the letter of advice written by Bader & Co., concerning the drawing of their drafts and the state of their business. The statement as to this fact was that " by means of rains and unfavorable weather, such as we have not had for several years, although after the very fine autumn weather the opposite kind of weather was to be expected, we have been greatly delayed in the shipment of cotton." This explanation, together with the facts which have been referred to, were sufficient, under the liberty given by defendants' letter of the twenty-fifth of October, to relieve the drawers of the drafts from a more literal compliance with the preceding obligation to particularly describe the shipment being made by them, and for or on account of which the proceeds of the drafts were desired. The qualification made in this part of the contract was material and important, so much so as to sustain the right of the plaintiffs to recover, even though a particular description of the contemplated shipments of cotton could not at the time be given.

The other authorities which have been relied upon in support of the appeal, on examination do not appear to be in any manner in conflict with the views which have been expressed, and a special reference to them will not, therefore, become necessary. All that could be required for the purposes of the action is, that the plaintiff's right to maintain it should be shown within the rules and principles to which reference has been made, and that was done by the proofs appearing upon the trial.

The judgment in the case should therefore be affirmed.

DAVIS, P. J., concurred.

Present — DAVIS, P. J., and DANIELS, J.

Judgment affirmed.