## AMERICAN STEEL CO. v. IRVING NAT. BANK.

(Circuit Court of Appeals, Second Circuit. April 6, 1920.)

No. 148.

**1. Banks and banking ☞191—Bank liable for refusal to honor letter of credit.**

Where defendant bank issued a letter of credit to plaintiff covering the price of merchandise to be shipped by plaintiff to a third party, it is no defense to an action for refusal to honor a draft made by plaintiff pursuant to the letter of credit, attached to the bills of lading, that owing to a recent government regulation the purchaser could not export the merchandise as intended.

**2. Banks and banking ☞191—Cannot revoke letter of credit acted upon.**

A bank issuing a letter of credit on behalf of a depositor to a third person, who acts on it, cannot justify its refusal to honor its obligation because of contract relations between it and the depositor.

**3. Banks and banking ☞191—"Letter of credit"; "general letter of credit"; "special letter of credit"; definition of terms.**

A letter requesting one person to make advances to a third person on the credit of the writer is a "letter of credit"; it is general, if directed to the writer's correspondents generally, and special, if addressed to some particular person.

[Ed. Note.—For other definitions, see Words and Phrases, General Letter of Credit; First and Second Series, Letters of Credit; First Series, Special Letter of Credit].

In Error to the District Court of the United States for the Southern District of New York.

Action by the American Steel Company against the Irving National Bank. Judgment for defendant, and plaintiff brings error. Reversed.

The plaintiff is a corporation organized under the laws of the state of Pennsylvania. The defendant is a banking corporation organized under the laws of the United States, and is a citizen of the state of New York, residing in the Southern district thereof.

Larkin & Perry, of New York City (Albert Stickney and James L. Banks, Jr., both of New York City, of counsel), for plaintiff in error.

Charles Oakes, of New York City, for defendant in error.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

ROGERS, Circuit Judge. [1] This is an action to recover the sum of $42,336 and interest upon a draft drawn by the plaintiff upon the defendant, and presented to the latter for payment on April 24, 1918. Payment was refused for a reason presently to be stated. The draft was drawn pursuant to a letter of irrevocable export credit issued by defendant and which was in the following form:

"American Steel Company, Park Building, Pittsburgh, Pa.—Gentlemen: You are hereby authorized to draw upon us for account of MacDonnell Chow Corporation at sight to the extent of forty-three thousand two hundred fifty ($43,250.00) covering shipment of tin plates.

"Documents (complete sets unless otherwise stated) comprising bills of lading issued to order, indorsed in blank.

"Invoices.

"Insurance policies covering marine and war risk to be delivered to us against payment.

"Insurance as above.

"Bills of lading issued by forwarding agents will not be accepted, unless specifically authorized herein, and any modifications of the terms of the credit must be in writing, over authorized signatures of this bank. .

"Drawings must clearly specify the number of this credit.

"Yours very truly,    Irving National Bank of New York,

            "Penny, Vice President.

      ·"W. N. Estrom, Manager Foreign Department.

"Entered E. A. R."

The above letter of credit was afterwards amended by a letter, dated July 11, 1917, in which the defendant wrote:

"Please note that we have been informed by the MacDonnell Chow Corporation of this city that the insurance certificates covering marine and war risk will not be required under the above credit.

"All other conditions remain as before."

The complaint alleges that the letter of credit was issued by defendant to plaintiff for a valuable consideration received by defendant, as an inducement to plaintiff to enter into and perform a contract for the sale of tin plate made between plaintiff and the MacDonnell Chow Corporation. The latter is a New York corporation, and the contract between plaintiff and it provided for the sale to it of 3,000 base boxes of sheet tin, 14x20, 224 sheets in a box, of a base weight of 85, and of a weight per box of 170 pounds, at a price per box of $28.90 f. o. b. Pittsburgh district. It also alleges that plaintiff duly sold and shipped to the said MacDonnell Chow Corporation, f. o. b. Pittsburgh district, the merchandise above referred to, and the plaintiff duly presented its draft to the defendant at its New York office in the amount of $42,336, accompanied by bills of lading covering said shipment, issued to order, indorsed in blank, and invoices, all as required by the irrevocable letter of credit. It also alleges that plaintiff has duly performed all the requirements and stipulations of the irrevocable export credit issued by defendant and modified in the form pointed out above.

The defendant in its answer, in addition to a general denial, set up three affirmative defenses. The first defense set forth the terms of the contract between plaintiff and the MacDonnell Chow Corporation, and alleged that the plaintiff failed to make shipment of the merchandise within the time limited by that contract. The second defense alleged that, by reason of federal prohibition of exports from the United States of tin plates, the performance of the contract between the plaintiff and the MacDonnell Chow Corporation became impossible of execution, inasmuch as the MacDonnell Chow Corporation was unable to obtain a license permitting the export of the merchandise within the time required by the contract. The third defense alleged a resale by the plaintiff of tin plates which were the subject of the contract with the MacDonnell Chow Corporation, and claimed an offset by the amount alleged to have been realized on the resale.

[3] Letters of credit have long been known to the commercial law, and the principles which govern them are well established. A letter requesting one person to make advances to a third person on the credit of the writer is a letter of credit. These letters are general or special. They are general, if directed to the writer's correspondents generally. They are special, if, as in the case at bar, they are addressed to some particular person. If the letter is addressed to a particular person, who advances goods or money on it in accordance with its tenor, the letter becomes an available promise in favor of the person making the advance. When acted on, and the advances made in accordance with its terms, a contract is created between the writer of the letter and the party who has acted upon it, upon which an action can be maintained.

The evidence shows that plaintiff delivered the tin plate contracted for to the Waynesburgh & Washington Railroad Company, and that this was within the Pittsburgh district, as the contract required. It also appears that the bills of lading were issued on April 23, 1918. The bills of lading, the invoices, the letter of credit, and the draft were presented to the defendant on the next day, and payment was refused, although the letter of credit, as appears on its face, did not expire until June 13, 1918. The first defense that plaintiff failed to make shipment within the time limited by the contract is without any basis of fact.

[2] The second defense, that the contract became impossible of execution, inasmuch as the MacDonnell Corporation was unable to obtain a license from the United States government permitting the export of the tin plate, is wholly inconsequential. The liability of the bank on the letter of credit as agreed upon between plaintiff and defendant was absolute from the time it was issued, and it was quite immaterial whether the defendant could export the tin or not. The law is that a bank issuing a letter of credit like the one here involved cannot justify its refusal to honor its obligations by reason of the contract relations existing between the bank and its depositor.

In Gelpcke v. Quentell, 74 N. Y. 599, the plaintiffs were bankers in the city of New York, and defendant was a banker at Bremen. The defendant, in December, 1859, opened a credit with the plaintiff in favor of Henry Rodewald & Co. in New Orleans to the amount of $50,000. The plaintiffs on January 17, 1860, wrote Henry Rodewald & Co. that Quentell had opened a credit with them in Rodewald & Co.'s favor "to be used by your drafts sixty days' sight against shipments of consignment to the address" of Quentell, and "that your drafts will meet with prompt protection." On January 18, 1860, Quentell wrote to the plaintiffs, stating that he was obliged to recall the credit extended to Rodewald & Co., but that if, up to the arrival of the letter, acceptances had already been made against the credit, the plaintiffs' drafts for reimbursement would be promptly honored, and asked the plaintiff to communicate to Rodewald & Co. the revocation of the credit. The plaintiffs received the letter of revocation on February 6, 1860, and on the same day wrote Rodewald & Co., notifying them of the revocation. On February 1, 4, and 7 Rodewald & Co. drew

bills upon plaintiffs, who accepted the same on February 8, 10, and 13, and paid them at maturity, notifying defendant. He refused to reimburse plaintiffs. The court held:

"That defendant could not, by his revocation of the credit, escape liability to indemnify plaintiffs against responsibilities which they had incurred, or require them to violate contracts which they had made, in pursuance of the letter of credit before notice of the revocation; that as, in pursuance of defendant's instructions, plaintiffs had given credit to Rodewald & Co., and promised to accept their drafts, which credit was outstanding at the time they received the revocation, it was binding upon them, and they were bound to accept the drafts drawn by Rodewald & Co. before they were notified of the withdrawal of the credit thus given them. * * *"

In Sovereign Bank of Canada v. Bellhouse, Dillon & Co., Ltd., 23 Quebec Official Law Reports (King's Bench) 413, it appears that one Richardson had contracted to buy 36,000 barrels of cement from Bellhouse, Dillon & Co., of London. The latter had contracted to buy the same quantity of the cement from Thomas Bell, Sons & Co., of Antwerp. Richardson induced the Sovereign Bank of Canada to issue a letter of credit in favor of Bellhouse, Dillon & Co. The letter of credit was addressed to the Anglo-Austrian Bank, London, E. C. When Bellhouse, Dillon & Co. began drawing under the letter of credit, the Anglo-Austrian Bank informed them that it had been canceled by Richardson. Thomas Bell, Sons & Co. thereupon canceled their contract with Bellhouse, Dillon & Co., and the latter brought suit against the Sovereign Bank for damages. In the course of the opinion of the court Mr. Justice Carroll said:

"Could this contract be annulled at the demand of Richardson, supposing there is an absolute promise on the part of the bank? We must answer in the negative. Undoubtedly a person who can induce a bank to give him a letter of credit may by his subsequent line of conduct justify the bank in canceling it; but it is not the same when a customer induces a bank to give a letter of credit to a third party. In that case, the customer cannot, by his own will, compel the bank to cancel the letter, because there is no contract between the customer and the bank, but only between the bank and the third party. * * *"

There is but one vital question involved in this case. It is whether the letter of credit already set forth herein is a complete and independent contract between the plaintiff and the defendant. This court is satisfied that it is, and that by it the defendant gave authority to the plaintiff to draw upon it up to the sum of $43,250, and impliedly promised to pay drafts so drawn, when accompanied by certain specific documents, to wit, the invoices and bills of lading, provided the drafts were drawn and presented prior to the expiration of the credit on June 13, 1918.

The defendant in effect seeks to read into the contract a provision that the plaintiff's rights under the letter of credit should be subject to the superior right of the MacDonnell Chow Corporation to modify the contract which the bank had made with the plaintiff. We do not so understand the law.

Judgment reversed.