PETER DOELGER, Respondent, v. THE BATTERY PARK NATIONAL BANK, Appellant.

First Department, June 2, 1922.

Banks and banking — letter of credit — action against bank issuing irrevocable letter of credit for refusal to honor draft — letter provided for presentation of bills of lading dated not later than November first — extension of credit one month extended time of shipment — letter of extension ambiguous and parol evidence admissible — bill of lading for part of shipment tendered few days before expiration of extension and payment of draft refused — trial court ruled that time of shipment not extended, and that plaintiff must show ability to perform as of November first — evidence of ability to buy bills of lading dated before November first not of probative force — letter of credit not option to be accepted but complete contract — tender of remaining goods unnecessary after repudiation — damages — measure of damages is difference between market value at date of repudiation and contract price — instruction as to damages erroneous.

In an action against a bank to recover damages for its refusal to honor drafts drawn against an irrevocable letter of credit issued to the plaintiff, it appeared that the letter of credit, which was issued on October 14, 1918, provided that it would be available by sight drafts accompanied by railroad bills of lading dated not later than November 1, 1918; that on October 28, 1918, the bank wrote to the plaintiff that the amount of the letter of credit had been increased and stated as follows: " We also wish to inform you that this credit has been extended to expire December 1st, 1918. All documents pertaining to the above must be in our possession on or before this date. All other terms and conditions of this credit remain the same as heretofore;" that the extension was made at the request of the purchaser of the goods for which the letter of credit was issued to cover. On November 25, 1918, the plaintiff, having shipped a carload of steel, presented to the defendant a sight draft for the contract price thereof and the defendant refused payment on the ground that it had been instructed by the purchaser not to pay the same. On the trial the court ruled that the extension did not affect the requirement that the bills of lading must be dated on or before November 1, 1918, and that parol evidence was not admissible to explain the letter of extension, and the court ruled also that it would be competent proof of plaintiff's ability to perform the contract if he could show that it was possible to procure in the market bills of lading issued on or prior to November 1, 1918. Although the court ruled against the plaintiff as indicated, he succeeded in obtaining a verdict against the defendant.

Held, that the letter of extension of the letter of credit extended the date of the bills of lading from November 1, 1918, or before, until December 1, 1918, or

before, and that such was the intention of the parties. This is established not only by the letter itself, but by the fact that it was given four days before the original letter expired and the defendant did not deny until after the action had been once tried that the plaintiff had tendered a bill of lading in accordance with the terms of the letter of credit, and by the fact that the defendant did not repudiate the contract on the ground that the bill of lading was dated subsequent to November first, but on the ground that the purchaser had directed it so to do.

The evidence offered in behalf of the plaintiff that bills of lading dated prior to November 1, 1918, could have been procured in the market before December 1, 1918, did not have any probative force, for it was uncertain, highly speculative and based upon opinion testimony.

The letter of credit in this case was a complete and independent contract between the plaintiff and the defendant based upon a valuable consideration and it was not as contended by the defendant an option which must be accepted by the performance of certain acts in accordance with its terms before a liability was fastened upon the defendant, and it did not become ineffective because the plaintiff did not ship any goods on or before November 1, 1918, as required by the terms of the original letter of credit.

The unequivocal repudiation of the letter of credit by the defendant when the first draft was presented to it excused the plaintiff from thereafter making a tender of the remaining portion of the goods.

On the breach of the contract by the defendant the plaintiff became entitled to recover from the defendant the damages which it could have established in an action against the buyer, that is to say, the difference between the then market value of the steel and the purchase price thereof as fixed by the contract between the plaintiff and the buyer.

It was error for the court to so combine its charge as to the rule of damages with its charge that the jury must find that the plaintiff could have bought bills of lading for the specified steel dated on or before November 1, 1918, as to lead them into the belief that the market price of the bill of lading dated prior to November first was an element to be considered in determining the damages.

LAUGHLIN and MERRELL, JJ., dissent in part.

APPEAL by the defendant, The Battery Park National Bank, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 22d day of April, 1921, upon the verdict of a jury, and also from an order entered in said clerk's office on the 4th day of May, 1921, denying defendant's motion for a new trial made upon the minutes.

*Rounds, Hatch, Dillingham & Debevoise* [*Ralph S. Rounds* of counsel; *Eugene Congleton* and *Francis E. Neagle* with him on the brief], for the appellant.

*Shearman & Sterling* [*Carl A. Mead* of counsel; *Chester B. McLaughlin, Jr.,* with him on the brief], for the respondent.

GREENBAUM, J.:

The plaintiff entered into an agreement to sell to the corporation known as the Machinery and Metals Sales Company 800 tons of

round shell discard steel bars, which required the buyer to provide an irrevocable domestic documentary letter of credit from a responsible bank in New York, covering the purchase price of the merchandise available against the sight drafts accompanied by railroad bills of lading and commercial invoices. In accordance with this agreement the defendant issued its irrevocable letter of credit on October 14, 1918, in which it authorized the plaintiff to draw on it for the account of the Machinery and Metals Sales Company up to an aggregate amount of $65,410 for the invoice cost of " 800 ton Round Shell Discard Steel Bars, conforming to Machinery & Metals Sales Company's orders Nos. 3229,˙3230, 3232, 3233 and 3235," available by sight drafts accompanied by railroad bill of lading and commercial invoice (in duplicate) shipment from Pittsburgh District to Seattle, Washington, bills of lading to be drawn " to the order of order (*sic*) and endorsed in blank and dated not later than November 1st, 1918," which will be honored on presentation at the office of the defendant " on or before November 3rd, 1918." On October 28, 1918, the defendant wrote to the plaintiff as follows: " Referring to our letter of credit No. 536 issued in your favor for $65,410, kindly note that same has been increased $600, making the total credit to read $66,010. We also wish to inform you that this credit has been extended to expire December 1st, 1918. All documents pertaining to the above must be in our possession on or before this date. All other terms and conditions of this credit remain the same as heretofore."

The extension mentioned in the foregoing letter was made at the request of the Machinery and Metals Sales Company as evidenced by the following letter written by it to the defendant:

" GENTLEMEN.— Referring to your letter of credit No. 536, would thank you to increase this L/C in the amount of $600, making a total of $66,010. Also extend this credit until December 1st, 1918. All other terms and conditions are to remain unchanged.

" Yours very truly,

" (signed) MACHINERY & METALS SALES COMPANY,

" J. J. WHITEHEAD, *Pres.*"

On November 25, 1918, the plaintiff, having shipped a carload of the steel, presented to defendant a sight draft for $2,920, the purchase price thereof, accompanied by an invoice and railroad bill of lading dated November 20, 1918. Defendant refused payment of the draft for the reason stated in the following letter addressed to plaintiff, dated November 25, 1918:

" Answering your letter of the 23rd inst. referring to our credit No. 536, dated October 14th, 1918, for $66,010 and assigned by

you to the Guaranty Trust Company of New York, we have to advise you that payment under this credit is declined in accordance with instructions from the Machinery & Metals Sales Company, as per their letter of the 15th instant — copy of which is herewith attached.                    Very truly yours,

                              " E. B. DAY,
                                 " *Vice-President.*"

It thus appears that the defendant refused to honor plaintiff's draft solely because the buyer requested it so to do. The learned counsel for the appellant conceded in open court that such a request in itself was not a legal justification on the part of the defendant to refuse payment of the draft.

This action was commenced on January 23, 1919, after the expiration date of the extended letter of credit, for the recovery of damages alleged to have been sustained by the plaintiff by reason of defendant's breach of its contract. Upon the foregoing state of facts a comparatively narrow issue was presented. The burden devolved upon the plaintiff to establish what, if any, damages he sustained by reason of the unwarranted action of the defendant in dishonoring the draft upon the letter of credit and to that end plaintiff was required to prove that he was ready, able and willing to perform his contract with the buyer. The record, however, discloses a somewhat complicated situation principally arising from the learned trial court's construction of the defendant's letter which advised plaintiff of the extension of the expiration date of the letter of credit to December 1, 1918. The court held that the letter did not carry with it an extension of the time for the shipment of the steel beyond November 1, 1918, the date originally fixed in the letter of credit since there was no specific mention of such an extension; and that it was not competent to introduce evidence of the circumstances under which the extension letter was written as bearing upon its construction. Plaintiff offered to show that the letter was sent by the defendant upon the request of the buyer and for his benefit; that at the time it was written plaintiff was prepared to ship all the steel ordered before November first, and that shipment was deferred upon the request of the buyer; that conditions in the trade had arisen which prompted it to procure plaintiff's consent to the extension, and that the defendant bank knew that the Machinery and Metals Company desired a delay in the shipment. It seems to us clear that, unexplained, it would be presumed that the object of the extension was to extend the date of shipment either because the seller had obtained the buyer's consent thereto or because the

buyer for reasons of its own desired a delay in the shipment. It stands to reason that, if the seller was ready to ship before November, he would not be apt to postpone shipment but would be anxious to receive payment as soon as possible. It is also significant that the defendant's extension letter specifically recites that " all documents pertaining to the above must be in our possession on or before this date " (referring to December first). Such a recital gives added force to the argument that plaintiff was not expected to have the bills of lading and invoices limited to a date not later than November first, but that it was intended that time of shipment be extended up to December first. Any other interpretation would not give effect to and would ignore the words " all documents [meaning invoices and bills of lading] must be in our possession or before December 1st," for the letter of credit expressly provided that the sight drafts were to be accompanied by bills of lading and invoices. Why should there have been a reiteration in the letter of extension that the bills of lading and invoices were to be in defendant's possession before December first, unless there was a special reason for so doing

As bearing upon the intention of the parties, it is also important to bear in mind that the letter of extension was dated October 28, 1918, four days before November first, the latest date under the letter of credit for tendering the bills of lading, and that the parties then knew that no shipments had been made.

Another circumstance, which convincingly shows that the parties intended to extend the time of shipment, was that in its first amended answer defendant admitted, by not denying the allegations in the plaintiff's amended complaint, that the plaintiff had tendered a bill of lading in accordance with the letter of credit; and that, in its second and partial defense, it alleged that the carload of steel bars was delivered by the plaintiff to the railroad " in accordance with the terms of his contract with the Machinery & Metals Sales Company; " and that it was not until a second amended answer was served, after a prior trial of this action and within a few days of the trial which resulted in the judgment appealed from, that defendant denied for the first time that plaintiff had tendered a bill of lading in accordance with the terms of the letter of credit.

There is still a further circumstance that may properly be considered in seeking the intention of the parties. Defendant's repudiation of its contract was not based upon the ground that the bill of lading was dated subsequent to November first, nor upon the ground that the defendant had not complied with all the terms of the letter of credit applicable to him, which it assuredly

would have done if it had been understood that the dates of the bills of lading were not to be extended. It would have been most opportune for defendant to have put its refusal to pay on the ground that the bills of lading were dated subsequent to November first, rather than to place its refusal to honor the drafts upon the indefensible ground that the buyer desired it so to do. Hence, defendant might well be deemed to have acquiesced in a construction of the letter of extension that the time of shipment had thereby been extended. And, in any event, the circumstances enumerated are such as the jury might properly have been instructed to take cognizance of in determining the meaning of the letter of extension, which we have shown was at least so uncertain or ambiguous as to justify the admission of parol evidence to explain the intention of the parties. In this connection it also should be borne in mind that the letter of extension was written by the defendant, and, therefore, should be most strictly construed against it. Notwithstanding that the court ruled against the plaintiff, as above indicated, he nevertheless succeeded in obtaining a verdict against the defendant, and he is, therefore, not in a position on defendant's appeal to urge his exceptions to the adverse rulings of the court. It thus becomes necessary to determine whether there remained sufficient proof to uphold the plaintiff's verdict.

The learned trial court permitted the plaintiff to show, if he could, whether on November twenty-fifth and thereafter up to December first, it was possible to procure in the market bills of lading issued on or prior to November 1, 1918, for steel bars of the kind and lengths described in the letter of credit, upon the theory that, if plaintiff could submit such evidence, it would be competent as proof of his ability to perform his contract. As a matter of fact, the plaintiff did produce several witnesses, who were apparently familiar with the state of the market, who testified that in October, 1918, there was a decided break in the price of " Round Shell Discard Steel Bars " owing to war conditions, and that there were heavy cancellations of orders for such bars, and that bills of lading bearing a date prior to November 1, 1918, covering such merchandise, were possible of procurement.

The testimony in behalf of the plaintiff established that, as matter of fact, he had purchased from the Republic Structural Iron Works of Cleveland, Ohio, all the steel bars required for the fulfillment of the orders of the buyer, and that they were all ready for shipment during the month of October, 1918.

Upon the foregoing state of facts the defendant contends that the letter of credit was not binding or effective after November 1,

1918, because the plaintiff did not ship any merchandise on or before that date, as required by the terms of the letter of credit; that the letter of credit "was an irrevocable offer which created no contractual relation until it was accepted by the shipment of merchandise in accordance with its terms and by the presentation of proper drafts and bills of lading;" and finally, that the trial justice erroneously charged the jury as to the rule of damages applicable to the case.

The first question that arises is whether or not the proofs offered in behalf of the plaintiff that bills of lading dated prior to November 1, 1918, were possible of procurement in the market before December 1, 1918, were sufficient to establish ability on the part of the plaintiff to perform. We are of opinion that evidence of possible procurement of such bills of lading was uncertain and highly speculative, based as it was upon opinion testimony given long after 1918, and unsupported by any personal knowledge of the existence of bills of lading, which covered the specifications of the steel bars set forth in the letter of credit; and that such testimony had no probative value.

The appellant argues that a letter of credit is an instrument in the nature of an option, which must be accepted by the performance of certain acts in accordance with its terms before a liability is fastened upon the issuer of the letter. But, assuming that this is a correct statement of the law, as applicable to certain kinds of letters of credit, the fact is that the letter under review was issued upon a valuable consideration and was declared to be irrevocable.

The letter of credit upon which this action is based was a complete and independent contract between the plaintiff shipper and the defendant bank which issued it based upon a valuable consideration. (*Frey & Son, Inc.,* v. *Sherburne Co.,* 193 App. Div. 849, 853; *Lamborn* v. *Lake Shore Banking & Trust Co.,* 196 id. 504, 506; affd., 231 N. Y. 616.)

Besides, we have here the overt act of the defendant, which, upon presentation to it of the draft accompanied by the bill of lading and the invoice as required by the letter of credit, not only refused to honor the draft then presented to it, but accompanied that act by the solemnly written statement to the effect that it would honor no draft under the letter of credit, because the buyer so requested it. Such an act on the part of the defendant constituted a repudiation of its contract and excused the plaintiff from going through the idle ceremony of making a tender of the remaining portion of the goods, which were then on store with the Republic Structural Iron Works.

It seems to us that upon the breach of the contract by the defend-

ant, the plaintiff became entitled to recover from the defendant the damages which it could have established in an action against the buyer, the Machinery Metals and Sales Company, that is to say, the difference between the then market value of the steel bars and the purchase price thereof as fixed by the contract between the plaintiff and the metals company.

The defendant virtually acted as the tool or agent of the Machinery Metals and Sales Company when it dishonored the letter of credit, and presumably was prepared to meet all the consequences of loss suffered by the plaintiff, which would have been recoverable from the buyer in whose behalf the defendant acted, when it breached its contract.

In *Urquhart, Lindsay & Co., Ltd.,* v. *Eastern Bank, Ltd.* (L. R. [1922] 1 K. B. 318), a recent decision in the King's Bench Division, to which our attention was called by the learned counsel for the respondent, we find a situation quite similar in its essential aspect to the one here presented. The court there stated: " These damages are not for non-payment of money. It is true that non-payment of money was what the buyer was guilty of; but such non-payment is evidence of a repudiation of the contract to accept and pay for the remainder of the goods; and the damages are in respect of such repudiation."

The court also held that the bank, which in that case had repudiated its obligations under its letter of credit, was substantially in the same position as the buyer would be had he absolutely refused to pay for an installment of the merchandise, that is to say, that the seller in such case would have canceled the contract and claimed damages upon the footing of an anticipatory breach of the contract of sale.

It is, however, not necessary in the instant case to base the recovery upon the theory of an anticipatory breach for the reason that the defendant's absolute repudiation of its contract on November twenty-fifth took place five days before December first, the expiration of the life of the letter of credit, and this action was brought some weeks thereafter.

We have sufficiently shown that the judgment appealed from cannot stand. It may be proper, however, to amplify our reasons for reversing the judgment by a consideration of the instructions to the jury on the question of damages. The learned trial justice in one portion of his charge had properly instructed the jury that the rule of damages was the difference between the price at which the plaintiff had sold the steel bars to the Machinery and Metals Sales Company and what he would have been obliged to pay therefor in the market between November twenty-fifth and December first.

When the jury returned a verdict in favor of the plaintiff for upwards of $26,000, the plaintiff's counsel moved to set it aside and the jury was then interrogated, with the consent of counsel in open court, and asked to explain how the verdict was reached. To this the foreman of the jury replied as follows: " We find that we could not come to any understanding as to what the market price of a bill of lading would have been dated prior to November 1st. We know that $81.76 was the selling price, and the market price of the steel was $24.00 and our average between the price of the bill of lading prior dated — dated prior to November 1st, 1918, we calculated or estimated between the $24.00 and the $81.76, as to striking a sort of a figure that we could calculate upon and that would make the price of $52.88 a ton; and the loss or damage, whatever we may call it, is the difference between $52.88 and $81.76, which would be $28.88 per ton. Eight hundred tons times that would be $23,104. The interest to date would be $3,292.32, making $26,396.32."

It is thus evident that at that time the jury had conjectured as to the price plaintiff would have been obliged to pay for a bill of lading dated prior to November first. Indeed, the foreman of the jury stated: " We struck a happy medium — average — between the $24.00 and $81.76 and the average figure between those two figures — the selling price and the market price — and therefore the speculative price that would have existed prior to November 1st." The jury was then reinstructed, in effect, that, if it found that the defendant had refused to honor the plaintiff's draft on November twenty-fifth, then the plaintiff could, between that date and December first, have supplied himself with steel bars by bills of lading, and the cost of such bills would be a basis of estimating the damages. After the jury again retired, it sent a written communication to the trial justice asking to be advised as to the court's intention in charging the jury as to the market price of that kind of steel. " By ' That kind of steel ' do you mean ' round shell discard steel bars ' of specified sizes, etc., or do you mean ' round shell discard steel bars of specified sizes, etc., loaded on cars en route to Seattle, covered by ' order ' bills of lading dated prior to November 1st, 1918, and invoices etc.' The jury feels that there is a radical difference between these two interpretations. The first would be between $20 and $24, the other would be higher, but there has been no evidence, to our mind, that has been introduced to determine this value." The court then wrote out the following answer to the jury's question: " You must find (1) Could the plaintiff between November 25th and December 1st have bought round shell discard steel of the specified sizes represented by order bills of lading,

dated on or before November 1st, destination Seattle? If he could not, your verdict must be for the defendant. If he could, he, plaintiff, is entitled to recover. (2) The difference between the contract price of the steel sold, namely, $81.76 per gross ton, and what would have been its market value in the Pittsburgh district between November 25 and December 1, 1918." The jury subsequently rendered a verdict in favor of the plaintiff for $52,792.64.

The rule of damages laid down by the court was thus intimately bound up with the charge that the jury must find that the plaintiff could have bought order bills of lading for the specified discard steel bars dated on or before November first, destination Seattle, which, as we have heretofore stated, was purely speculative.

It follows that the judgment and order should be reversed and a new trial ordered, with costs to the appellant to abide the event.

Clarke, P. J., and Smith, J., concur; Laughlin and Merrell, JJ., dissent in part.

Laughlin, J. (concurring in part and dissenting in part):

I am of opinion that the trial court erred in construing the extension agreement with respect to the letter of credit as requiring the plaintiff to present on or before the date specified in the extension agreement order bills of lading dated on or before November 1, 1918, representing shipments of the quantity, quality and class of steel specified in the contract by which the plaintiff agreed to sell the steel to the Machinery and Metals Sales Company, and consigned to Seattle. Under this erroneous construction of the extension agreement, opinion evidence was received with respect to whether such bills of lading could have been purchased by the plaintiff after the defendant repudiated its contract on the 25th of November, 1918. The jury realized that this testimony had but little probative force as evidence and so reported to the court, and were instructed that they must render a verdict for the defendant unless they found that the plaintiff could have purchased such bills of lading. They again retired and found in favor of the plaintiff, and evidently assessed the damages in accordance with the final instructions of the court, which were to award to the plaintiff, in the event they found he was entitled to recover, the difference between the contract price of $81.76 and the market price of the steel in the Pittsburgh district, from which it was to be shipped, between the twenty-fifth of November, when the defendant repudiated its contract, and the first of December, when the plaintiff was obligated, under the extension of the letter of credit, to present the documents to the defendant. Plaintiff presented evidence tending to show that the market value of this class of steel in the Pittsburgh district between

the twenty-fifth of November and December first was from $20 to $25 per ton. The jury in the first instance understood the instructions of the court to require them to determine the damages on the basis of the difference between the contract price and what such order bills of lading bearing date on or before the first of November would have cost the plaintiff between November twenty-fifth and December first; and in reporting a verdict on that theory, they stated, among other things, that they found that the market price of the steel between November twenty-fifth and December first was $24 per ton. They were instructed by the court to add interest to any recovery by the plaintiff and to compute it from the 1st day of December, 1918, down to the date of the trial. It is quite clear that this is the theory on which the amount of the verdict was determined by the jury, for the difference between the market price of $24 per ton and the contract price of $81.76 per ton is $57.76, and on that basis the difference between the cost of the 800 tons and the market price thereof would have been $46,208, and the interest on that amount for the period for which the jury were directed to add interest was $6,546.13, making an aggregate amount of $52,754.13. Evidently through some inadvertence or miscalculation the verdict was for $38.51 more than this amount, but it is not claimed that this discrepancy presents any ground for reversal.

I think the court should have ruled as matter of law that the extension of the time for the presentation of the documents from November third to December first likewise extended the time for making the shipments and obtaining the bills of lading. The defendant's original irrevocable letter of credit issued to the plaintiff authorized him to draw on it, for the account of the purchaser, for the invoice cost, not to exceed a specified amount, of 800 tons of steel, conforming to the purchaser's specified orders, by sight drafts accompanied by " railroad bill of lading, commercial invoice (in duplicate), shipment from Pittsburgh district to Seattle, Washington; " and it was provided that the bills of lading should be order bills of lading and indorsed in blank and dated not later than November 1, 1918, and the defendant agreed to honor drafts so drawn on presentations at its office on or before November 3, 1918. The letter of credit was issued October 14, 1918, by the defendant by request of its customer, the Machinery and Metals Sales Company. On the 25th of October, 1918, that company requested the defendant to increase the letter of credit by $600 and to extend it until December 1, 1918, and following this request, the letter of the Machinery and Metals Sales Company closed as follows: " All other terms and conditions are to remain unchanged." On the twenty-

ninth of October plaintiff received from the defendant a letter bearing date October twenty-eighth, referring to the letter of credit and notifying him that it had been increased by $600, and informing him that the "credit" had been extended to expire December 1, 1918, and that "all documents pertaining to the above must be in our possession on or before this date," and closing with the sentence already quoted, to the effect that all other conditions and terms of the letter of credit were to remain the same as theretofore. Defendant contended that, notwithstanding the extension of the letter of credit, it was incumbent upon the plaintiff to present bills of lading dated on or before November first, and the court so held. I deem this ruling plainly erroneous. If the extension had not been granted until after November first, there might be ground for contending that its purpose was to afford the plaintiff, who had failed to make the shipments in time to obtain bills of lading dated on or before November first, an opportunity to purchase bills of lading which had already been issued within the period required by the original letter of credit, and which would correspond with the plaintiff's contract for the sale thereof; but since the extension appears to have been voluntarily granted by the defendant before the plaintiff's time to make the shipments and obtain bills of lading had expired, it would be, I think, a most unreasonable construction of the extension agreement to hold that it was merely intended to afford the plaintiff an opportunity, if he failed to ship the goods and obtain bills of lading before November first, to go into the market and endeavor to buy bills of lading that would fulfill his contract obligations with the purchaser, and under the letter of credit in time to present them to the defendant on or before December first. On the 15th of November, 1918, the Machinery and Metals Sales Company wrote the defendant, referring generally to a conversation by telephone on the subject, and stating, in substance, that the plaintiff had canceled the order for the sale of the steel by a letter to it dated November 7, 1918, and requesting the defendant *to revoke* the letter of credit and to make no further disbursements thereunder. It is unnecessary to consider the claim thus asserted in the letter from the purchaser to the defendant for it is not contended in behalf of the appellant that there was any justification for the cancellation of the letter of credit. On the twenty-fifth of November the defendant wrote the plaintiff, advising him that payment of a draft which he had presented against the letter of credit was declined in accordance with instructions contained in said letter of the Machinery and Metals Sales Company to it, a copy of which was annexed. This was an unqualified repudiation in toto of the defendant's agreement, evi-

denced by its letter of credit, to pay the drafts. It will be observed that the ground assigned on the trial and urged on the appeal, viz., that bills of lading issued on or before November first should have been presented, was not then suggested by the defendant. It placed the entire responsibility for its repudiation of its letter of credit upon its principal, which had taken the untenable position that the plaintiff had canceled the contract for the purchase of the steel. This complete repudiation by the defendant of its obligations to the plaintiff under the letter of credit relieved the plaintiff from making the shipments between that date and the first of November, and from tendering documents, and warranted this action for the damages sustained by the plaintiff, which was not brought until after December first, predicated on the difference between the contract price and the market price at which he could have purchased the steel between the date of the repudiation by the defendant and December first. ( *Urquhart, Lindsay & Co., Ltd.,* v. *Eastern Bank, Ltd.,* L. R. [1922] 1 K. B. 318; 35 Harvard Law Review [March, 1922], 539, 574.)

As I view the case, therefore, there was nothing for the consideration of the jury but the assessment of damages; and since the report of the jury shows that they determined, within the bounds of the testimony, the market price of the steel between the 25th of November and the 1st of December, 1918, plaintiff as matter of law was entitled to a recovery on that basis, and. in this view the errors of the trial court are immaterial. Although the point is not raised, since the verdict is excessive by thirty-eight dollars and fifty-one cents, the recovery should be reduced by that amount, and the judgment, as so modified, affirmed, with costs.

MERRELL, J., concurs.

Judgment and order reversed and new trial ordered, with costs to appellant to abide the event. Settle order on notice.