ARTHUR H. LAMBORN et al., Plaintiffs, v. NATIONAL PARK BANK OF NEW YORK, Defendant. ·

Supreme Court, New York County, May 15, 1924.

**Banks and banking — confirmed letter of credit with consideration moving from buyer is valid and imposes immediate obligation on bank — in absence of express expiration date letter continues for reasonable time — such letter not rejected by seller's request that bank fix definite expiration date — bank liable on draft.**

A letter of credit referred to by the defendant in a letter written on June 5, 1920, as a " confirmed credit " for a certain amount covering shipments from Java during August and September, 1920, is a valid contract between the seller and the bank, with consideration moving from the buyer, and imposes an immediate legal obligation on the latter.

In the absence of an expiration date the law imports a continuance of such letter of credit for a reasonable time after the agreed date of shipment, which in this case was until December 31, 1920, in view of possible delay incident to securing a steamer and the fact that the voyage from the place of shipment required approximately seventy-five days.

The seller's request by letter that the bank fix a definite expiration date did not constitute a rejection of the letter of credit. It was only a request to modify an existing obligation.

Under such a letter of credit the bank is liable to the seller for refusal to honor a draft duly presented with documents attached.

ACTION upon draft.

*Van Doren, Conklin & Mc Nevin* (*Louis O. Van Doren, Alfred C. B. Mc Nevin* and *Edward S. Bentley*, of counsel), for the plaintiffs.

*Louis F. Doyle* (*Emmett F. Smith*, of counsel), for the defendant.

PROSKAUER, J. On May 5, 1920, defendant wrote plaintiffs, "We have received instructions from Greenebaum Sons Bank * * * to open a confirmed credit in your favor with the Bankers Trust Co. for $79,685.76, payable against delivery of sight drafts" with documents attached "covering * * * Java White Sugar * * * f. o. b. cars Phila. * * * shipments during August and September, 1920. We advised the Bankers Trust Co. of this credit No. 13,840, but they have returned our advices stating that credit should have been opened directly with you and not through them. Kindly advise us in this connection."

On June tenth plaintiffs requested defendant to "issue this Letter of Credit * * * setting expiration date of December 31, 1920 * * * shipment * * * August and/or September from Java."

Defendant replied on June eleventh: "Relative to our confirmed credit No. 13,840 * * * we have no authority to extend the validity of this credit from October 1st to Dec. 31st * * *. This also applied to the shipping period * * * August and September from Java."

Defendant next wrote on August twenty-fifth: "Referring to our credit No. 13,840 * * * our correspondents have today telegraphed us directing that payment be suspended till further notice. Please advise us if this arrangement has your consent."

Plaintiffs replied on August thirty-first that they did not agree to this suspension and that "as this Letter of Credit shows no definite date of expiration, and as the sugar was sold * * * shipment from Java during August or September, 1920, we will look to you for payment of our sight drafts" when accompanied by documents.

Defendant answered on September second: "Regarding your remarks concerning the expiration date of credit No. 13,840 * * * in the course of our corréspondence * * * the expiration date of Oct. 1st is given and it was in connection with this that you requested us * * * to obtain an extension to Dec. 31st

if possible. We made the request but the extension was not granted."

On October first defendant notified plaintiffs that " our confirmed documentary export credit No. 13840, opened in your favor * * * has expired by limitation this date."

When, on December twenty-eighth, plaintiffs presented draft with documents, defendant refused payment on the ground that "Letter of Credit No. 13,840 * * * expired by limitation on October 1st, 1920." Plaintiffs sue for this dishonor of the draft.

Defendant, while recognizing that a letter of credit may be informal, attacks the sufficiency of the letter of May fifth because it contains no promise to the accredited party. It may be more accurate to call the letter of May fifth an " advice of credit opened confirmed." McCurdy, Commercial Letter of Credit, 35 Harv. L. R. 559, n. 52. Defendant regularly referred to " our confirmed credit No. 13,840," while plaintiffs wrote of " this Letter of Credit." In any event, the fundamentals of the letter of credit transaction may exist (33 Yale L. R. 651, n. 1) and banks do establish irrevocable credits for the benefit of one party at the request of another without integrating the promise into a formal letter. This letter is " ' instinct with an obligation ' imperfectly expressed " (*Wood* v. *Duff-Gordon*, 222 N. Y. 88, 91) and was treated by both parties as a letter of credit.

Viewed as a confirmed credit, it imposed a legal obligation on the bank at once. A recent case (clearly distinguishable because the proper documents were not presented) suggested by way of dictum that a letter of credit is an offer from the bank to the seller for the formation of a contract. *Moss* v. *Old Colony Trust Co.*, 140 N. E. Rep. 803 (Mass. 1923). To regard a confirmed letter of credit as a mere offer would be contrary to settled mercantile practice and destructive of the force of the word " confirmed." There are many and conflicting theories advanced to give this instant validity to a " confirmed credit." McCurdy, 35 Harv. L. R. 562–592. While no consideration flowed to the bank directly from plaintiffs, this letter was issued pursuant to request from, and implied promise of reimbursement and compensation by, plaintiffs' vendee. *Doelger* v. *Battery Park Bank*, 201 App. Div. 515, 521. It was a valid contract between the seller and the bank with the consideration moving from the buyer. McCurdy, 35 Harv. L. R. 574; 37 id. 327; Mead, Documentary Letters of Credit, 22 Col. L. R. 300–304; Williston Sales (2d ed.), § 469e; *Doelger* v. *Battery Park Bank, supra; Frey* v. *Sherburne Co.*, 193 App. Div. 849; *Gelpcke* v. *Quentell*, 74 N. Y. 599; *International Banking Corp.* v. *Irving Nat. Bank*, 283 Fed. Rep. 103, 104; *Amer. Steel Co.* v. *Irving*

*Nat. Bank*, 266 id. 41; *Sovereign Bank* v. *Bellhouse*, (1914) 23 Q. K. B. 413. It named no expiration date. The law imports into it, therefore, continuance for a reasonable time. The sugar was to be shipped from Java · August and /or September. This voyage required approximately seventy-five days. With allowance for delay in securing a steamer and ordinary contingencies December thirty-first was a reasonable date of expiration.

Defendant contends, however, that by the letter of June tenth plaintiffs rejected the credit. That letter is a request to fix a definite, where the existing contract provided only for a reasonable expiration date. Undoubtedly the beneficiary may ·reject the credit if he does not like its form. *International Banking Corp.* v. *Irving Nat. Bank, supra.* As stated, however, by Mr. McCurdy in 37 Harvard Law Review, 330, action by the seller " is important in determining whether he rejects a promise made to him supported by a consideration not moving from him; its significance does not lie in an acceptance or a rejection of an offer looking to the formation of a contract." This distinction defeats the contention that the letter of June tenth rejected the credit. It was only a request to modify an existing obligation.

The later correspondence is mere reassertion by defendant that the expiration date was October first, ineffectual to impair the obligation created by the original letter of May fifth to continue the credit in force for a reasonable time.

The correspondence relating to other letters of credit, introduced in evidence by plaintiffs, sheds no light on this transaction and has been disregarded.

Judgment for plaintiffs for $79,685.76, with interest from December 28, 1920.

Judgment accordingly.